MARJORIE BENTLEY, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division) No. 78-930

Opinion filed December 17, 1979.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert Retke, Assistant Corporation Counsel, of counsel), for appellants.

Robert M. Higgins, of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Marjorie Bentley, filed a two-count complaint charging false arrest and malicious prosecution against the city of Chicago and Francis W. Harsey, the arresting officer. Following trial, a jury returned a verdict for defendants. The circuit court subsequently granted plaintiff's post-trial motion for a new trial. We granted leave to appeal from the order granting a new trial under Supreme Court Rule 306 (Ill. Rev. Stat. 1977, ch. 110A, par. 306).

Officer Francis W. Harsey, a traffic investigator for the Chicago Police Department, was examined under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). He testified that on December 1, 1972, he received a radio assignment to make an accident investigation at Mt. Sinai Hospital. He arrived at the hospital emergency room shortly after 10 p.m. and met Bentley and her three children. Bentley said that she had called the police and wanted an accident report completed concerning a CTA bus accident. Her three children were on that bus in the morning on their way to school. Plaintiff was not on the bus.

Harsey had received police training in the law of arrest. He believed that he could not question a minor outside the presence of the child's

parents without permission. Harsey further testified that according to Bentley her three children were injured in the accident. Harsey asked Bentley if he could interview her children and she said no. He explained that to make an accurate investigation he needed to interview the children, but plaintiff still declined.

Officer Harsey made an attempt to interview the children and Bentley became very indignant, used profanity and started "thumping" him on his chest with her fingers. Harsey made several attempts to interview the children, but Bentley stopped him. Further pertinent testimony by Harsey follows:

"Q. Is it a fact that you attempted to interview one of the children and exclude Mrs. Bentley from the room?

A. No, I did not; not at that time.

Q. Did you ever tell her to get out of the room?

A. No, I didn't.

Q. Did she get out of the room?

A. She told me she was going to call her lawyer. Yes, she did leave.

Q. When she told you she was going to call her lawyer, what did you do then?

A. I asked one of the children what happened.

Q. You did interview the children without her presence?

A. No, I didn't. Because as soon as she saw I was going to talk to one of her children, she came running back and screamed and thumbed me in the chest and said 'I told you you can't interview them; you put down what I tell you to put down because that's what my lawyer told me to do'.

Q. Did she tell you you could interview them if she was present?

A. No. She said I couldn't interview them at all. She said to put down what she tells me to put down."

Harsey denied shutting a door on Bentley and putting her out of the room to interview her children. He testified that after about 30 minutes, Bentley had become so belligerent that he placed her under arrest for disorderly conduct. According to Harsey, Bentley was never handcuffed.

Other officers took Bentley to police headquarters and Harsey remained at the emergency room, where he took the statements of the children. Upon completing the statements, Harsey returned to police headquarters, filled out an arrest slip and signed a complaint against Bentley. That complaint charged her with obstructing a police officer in violation of section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 31—1). Harsey stated that this complaint was brought to trial but the charges were dismissed by the court and Bentley was discharged.

Karen Valerie Lewis, plaintiff's daughter, testified that on the morning of December 1, 1972, she was on a CTA bus and was injured in an accident. The bus slid into a pole, causing her head to hit the window. Karen was knocked unconscious for about five minutes. When she awoke, she felt dizzy, nauseated and had a headache. She went home, took aspirin and went to sleep. Upon awakening that night, she was very dizzy and was vomiting. Her mother took her to the emergency room at Mt. Sinai Hospital.

Karen also testified that she was sitting in a wheelchair waiting to have X rays taken when Officer Harsey arrived. According to Karen, Harsey put her mother outside of the room and asked her "all kinds of questions about the accident." Bentley, however, refused to allow Harsey to question her daughter outside of her presence because she was a minor (age 16). Harsey told Bentley to shut up. When Bentley insisted upon being present, Harsey wheeled Karen into a sideroom. He told Bentley that if she didn't shut up, she would be locked up. Bentley entered the room, but Harsey took her out by the arm and slammed the door in her face. When Bentley returned, she was arrested. After Bentley's arrest, Harsey completed interviewing her daughter.

Scarlet Annamarie Coleman, plaintiff's daughter, accompanied plaintiff and Karen to the hospital. She testified that when Officer Harsey arrived, he insisted that he question Karen alone. Bentley refused because Karen was a minor and was injured. The officer again insisted and Bentley persisted in her refusals. Harsey eventually went into an examining room with Karen and shut the door; Bentley opened the door and Harsey shut it in her face. The argument continued and Harsey told Bentley that if she kept interfering she would be arrested. Harsey also told Bentley to shut up and sit down. Other officers arrived at the emergency room during the argument. Harsey eventually arrested and handcuffed Bentley.

Kevin Bentley, plaintiff's son, was also present at the hospital. His testimony substantially corroborated his sisters' accounts of the incident. He saw Harsey wheel Karen into a room. When his mother followed, the officer grabbed her by the arm, led her out and slammed the door in her face.

Plaintiff, Marjorie Bentley Cobbs, testified that she was in the hospital emergency room with her children when Officer Harsey arrived. Harsey asked Karen what happened concerning the accident and said, "Well, I'm going to take her into this room" to make out a report. He told Bentley to wait where she was. Bentley said Harsey could not take Karen into the room alone and Harsey told her to shut up. Bentley replied that she had the right to be present, because Karen was a minor. Bentley further testified that Harsey wheeled Karen into the room and she followed. Harsey slammed the door in her face and Bentley pushed it open again.

Harsey then grabbed her by the arm and turned her around, but she pushed the door open and walked back in. Harsey told her that if she didn't leave he would arrest her. She responded, "You'll have to arrest me, this is my child and she's telling you—you can see that her head is hurting, she has to be admitted into the hospital." Harsey then arrested and handcuffed Bentley. The charges against her were ultimately dismissed.

Officer Marshal Andrews, of the Chicago Police Department, testified for defendants that he was present at the Mt. Sinai Hospital emergency room at about 10 p.m. on December 1, 1972. He observed Officer Harsey conducting a traffic investigation and saw a lady (whom he subsequently learned was plaintiff) become excited and swear at Harsey. Andrews approached the plaintiff and tried to calm her down. Andrews heard Harsey ask one of the children where the accident happened. Bentley would try to answer every question Harsey asked the children, even though she had not been on the bus during the accident.

Andrews testified that the conversation took place in a small room adjoining the waiting area called the "police room." There was no door in the room. Plaintiff went to the telephone and started shouting across the emergency room. Harsey telephoned his superiors for advice, while Andrews continued to try to calm Bentley down. Andrews explained to her that the officers just wanted to learn the facts surrounding the accident so they could prepare a proper report. Andrews found, however, that he could not rationalize with her. At this point, Harsey told Bentley that if she persisted she would be arrested. Bentley continued using loud abusive language and was arrested.

On cross-examination, Andrews testified that police officers do not have the right to question a minor without the permission of their parents and outside the presence of their parents, and that he did not hear Bentley refuse to allow Harsey to question her children. She just answered each question. He did not recall Harsey's asking permission to interview the children.

Officer Richard Gwin, Andrews' partner, testified that he also witnessed the incident. He observed Harsey arrest plaintiff for causing a disturbance. He assisted Harsey by phoning the police squadrol.

On cross-examination, Gwin stated that it was not his procedure to question a minor in the absence of his parent without the permission of that parent. Gwin heard Harsey explain to Bentley that he had to talk to her children to complete his report. She responded that he should include what she told him on the report.

After closing arguments, the jury returned a verdict in favor of defendants. Plaintiff filed a post-trial motion for a new trial that was argued by counsel. The trial court granted a new trial on the ground that

the jury decided the case contrary to the manifest weight of the evidence.

The sole issue upon review is whether the trial court abused its discretion in setting aside the jury verdict for defendants and granting a new trial.

■■■ The decision of the trial court to grant a new trial is discretionary and will not be reversed on appeal absent a clear abuse of discretion. (*Foster v. VanGilder* (1965), 65 Ill. App. 2d 373, 376-77, 213 N.E.2d 421.) The rationale behind this rule is that the trial judge is in a superior position to determine if there was a fair trial and whether substantial justice was accomplished. (*Effler v. Metzger* (1975), 29 Ill. App. 3d 55, 329 N.E.2d 327.) The trial court is afforded greater latitude in passing on questions of fact than on questions of law. (*Johnson v. Chicago Transit Authority* (1975), 28 Ill. App. 3d 945, 329 N.E.2d 395.) Nonetheless, in reviewing the trial court's exercise of discretion, where no procedural errors are alleged, the applicable standard is whether the jury's verdict was contrary to the weight of the evidence. (*Johnson v. Chicago Transit Authority* (1975), 28 Ill. App. 3d 945, 329 N.E.2d 395.) If factual questions are of substantially equal weight, the trial court may not grant a new trial. *Houston v. Zimmerman* (1975), 30 Ill. App. 3d 425, 333 N.E.2d 472.

In *Dailey v. Hill* (1968), 99 Ill. App. 2d 474, 479, 241 N.E.2d 683, the court said:

"Defendant was entitled to have these questions of fact decided by the jury, and it is irrelevant that the judge might have decided the case differently, based on his own evaluation of the testimony. Determination of the weight to be accorded conflicting testimony, the drawing of inferences from the evidence, and resolving issues of fact such as negligence are preeminently matters for the jury and not for the judge. In the proper exercise of his discretion a judge may not set aside a verdict and grant a new trial unless it is clear that the verdict resulted from passion or prejudice or is wholly unwarranted by the evidence. [Citations.] * * *."

■■ Plaintiff's complaint charges defendants with false arrest and malicious prosecution. False arrest is the unlawful restraint of an individual's personal liberty. (*Johnson v. Jackson* (1963), 43 Ill. App. 2d 251, 193 N.E.2d 485.) Section 107—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 107—2) provides in pertinent part:

"A peace officer may arrest a person when:
* * *
(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

Malicious prosecution consists of five distinct elements: (1) institution and prosecution of judicial proceedings by defendant; (2) lack of probable

cause for those proceedings; (3) malice in instituting the proceedings; (4) termination of the prior cause in plaintiff's favor; and (5) damages. *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E.2d 685.

Thus, if Harsey had reasonable grounds to believe plaintiff had committed an offense, then defendants committed neither false arrest nor malicious prosecution.

Harsey arrested Bentley for violating section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 31—1) (resisting or obstructing a peace officer), which provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of *any authorized act within his official capacity* shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both." (Emphasis added.)

On appeal, Bentley contends that the weight of the evidence clearly established that Harsey knew his attempts to interview her minor daughter Karen outside her presence were not "authorized acts." Hence, Harsey could not have reasonable grounds for concluding that plaintiff had violated section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 31—1).

Harsey testified that he did not believe he had the right to question a minor outside the presence of her parent if the parent refuses to let him do so. Officers Andrews and Gwin also testified that they believed they had no right to question a minor child without the permission of the parent and outside the presence of the parent.

We assume *arguendo* that if Harsey questioned Karen (a minor) outside plaintiff's presence, he committed an unauthorized act. The pivotal issue in this cause then is one of fact: whether Harsey did interview Karen outside of her mother's presence.[1]

Our review of the evidence convinces us that the jury heard two plausible, conflicting explanations of the incident from Bentley and her children and from Harsey and his fellow officers. The record contains testimony which, if believed, supports a jury verdict for defendants. This determination of credibility was a function particularly within the province of the jury and we cannot say that the jury's verdict was "wholly unwarranted by the evidence." *Dailey v. Hill* (1968), 99 Ill. App. 2d 474, 479, 241 N.E.2d 683.

We find that the circuit court abused its discretion in vacating the jury's verdict and in substituting its own determination of credibility.

---

[1] In this appeal plaintiff does not contest Harsey's questioning of Karen pursuant to his duty to investigate and report upon traffic accidents imposed by sections 11—408 and 11—415 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, pars. 11—408, 11—415), and section 27—388 of the Municipal Code of Chicago; she merely contends that she must be present.

Accordingly, the order of the circuit court granting a new trial is reversed, the jury verdict is reinstated and the cause is remanded for the entry of a judgment consistent with the jury verdict.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.