Jewell Hopwood, et al., Plaintiffs-Appellants, v. Thomas Hoist Company, an Illinois Corporation, Defendant Appellee and Separate Appellant, v. Sumner Sollitt Company, Third Party Defendant and Appellee.

Gen. No. 50,180.

First District, Third Division.

June 9, 1966.

Leonard M. Ring, of Chicago, for plaintiffs-appellants.

Baker, McKenzie & Hightower, of Chicago (Francis D. Morrissey and Thomas F. Bridgman, of counsel), for separate appellant.

Van Duzer, Gershon & Jordan, of Chicago (Louis Gershon and Horace W. Jordan, of counsel), for third party defendant.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The plaintiffs, Jewell Hopwood and John Harrod, appeal to this court from a judgment entered on a jury verdict in favor of the defendant, Thomas Hoist Company, and from the trial court's denial of their motion to set aside the verdict and grant them a new trial. The defendant, Thomas Hoist Company, was also a Third-Party Plaintiff in the lower court and has filed a separate appeal from a directed verdict in favor of Sumner

Sollitt Company, the Third-Party defendant, and has also appealed from the trial court's denial of its motion to set aside this verdict and grant a new trial, in the event that the verdict and judgment is reversed in the original action brought by the plaintiffs against Thomas Hoist.

The contentions of the plaintiffs are: (1) That since a custom cannot reduce the standard of care required by law, it was error for the court to admit into evidence the practice of the defendant not to set certain safety devices upon its hoist until notified to do so by the contractor; (2) that it was improper for counsel for defendant to base his closing argument upon the guilt of the third-party defendant, Sumner Sollitt Company; (3) that prejudicial error was committed by counsel for Sumner Sollitt when he brought out, in the presence of the jury, that plaintiff Hopwood had prosecuted a claim for workmen's compensation; (4) that the combined prejudicial error in this record resulted in a deterioration of the judicial process to such an extent that the plaintiffs did not receive a fair trial.

The facts are: Plaintiffs brought this action against the defendant hoist company for personal injuries they sustained on September 29, 1955, on a construction project at DeWitt and Chestnut Streets in the city of Chicago. At this time the plaintiffs were employed as carpenters by the third-party defendant, Sumner Sollitt Company, the general contractor of the construction project.

Thomas Hoist was engaged in the business of supplying contractors with hoisting equipment. In September of 1955 it leased to Sumner Sollitt a hoist consisting of a tubular tower made up of different pieces of pipe, a concrete bucket, a platform and cage designed to run along the rail inside the tower after assembly, and a power unit to operate the device. The power unit consisted of three drums, one of which operated the bucket, one the cage, and the other a boom.

437

The power unit was delivered completely assembled except for the setting of a certain safety device called a Lilly Overwind, which was designed to stop the platform from falling in the event that it descended at a greater speed than that for which it was set. This safety device, although attached to the power unit when it leaves the factory, is set after the equipment is installed in the field and ready for operation. The sections for the tower and the parts for the platform and cage were delivered in a disassembled state; the assembly and erection of the hoist was performed by Archer Ironworks, a subcontractor of Sumner Sollitt.

It was the duty of the general contractor, after the ironworkers finished the installation of the hoist, to enclose the cage with plywood and chicken wire so as to prevent men and equipment from falling out of it, and also to install a gate on the cage, which gate is usually operated by vertical lifting.

After delivery of the hoist and three to four days before the occurrence in question, Mr. Kelly, a workman for Thomas Hoist, visited the job site to install certain fuses which ordinarily were installed prior to delivery. These fuses were necessary so that the iron workers could rotate the drums and unwind the cables that connect the drums on the hoist to the cage. Prior to the installation of the fuses the hoist was not operable, nor was the cage enclosed or ready for carrying personnel.

Mr. Kelly testified that at that time, after installation of the fuses, from his experience it would take approximately 3 to 4 hours to make the hoist operable; also, it would take a week before the cage was readied for carrying personnel. At that time the hoist was not in such an erection state as to enable him to set the safeties. He further stated that when he went to the job site after the accident, the cage was just being installed on the platform.

Mr. Parker, plant superintendent for the hoist company, testified that the safety device is set when Thomas Hoist is notified to do so by the contractor. However, Sumner Sollitt did not so notify Thomas Hoist until after the accident. Mr. Kelly also testified that he was not in the habit of setting the safety until notified to do so, and he had not been notified until after September 29, 1955.

At the time of the accident, the hoist was operated by an employee of Sumner Sollitt. Thomas Hoist had no record that the hoist was being used prior to the accident, and likewise had no knowledge that it was being used for the carrying of personnel. The plaintiffs sustained their injuries when the hoist, upon which they were riding, fell from about the 4th or 5th floor to the ground level.

After the accident, Mr. Parker was notified and he came to the site to conduct an investigation. He found that the cable had not broken, and that the braking mechanism, which was new, operated on the hoist without incident when proper pressure was applied thereto. He found that the platform was not enclosed, as was normal when personnel was to be carried upon the hoist.

On August 30, 1956, Jewell Hopwood sued the defendant. Thereafter Sumner Sollitt intervened in that case in order to protect its lien for workmen's compensation payments made to Hopwood. On October 29, 1962, Thomas Hoist obtained leave to file a third-party complaint against Sumner Sollitt. This was dismissed on motion, as was a later amended third-party complaint. John Harrod filed his suit against the defendant on February 20, 1957. On June 27, 1963, the defendant filed a third-party complaint in the Harrod case against Sumner Sollitt, which was later dismissed.

The two cases were consolidated and started to trial without third-party complaints. This trial resulted in a mistrial on April 10, 1964. After the mistrial the de-

439

fendant obtained leave to file a second amended third-party complaint in the consolidated actions. The case was assigned for trial on May 27, 1964. After all of the evidence was heard the trial court directed a verdict for the third-party defendant. The jury then returned a verdict in favor of the defendant and against the plaintiffs.

The amended complaints of the plaintiffs contained two counts: Count I was based upon a wilful violation of the Scaffold Act (Ill Rev Stats 1953, c 48, §§ 60–69) in that the defendant failed to erect and construct a safe hoist, allowed said hoist to be used before it was safe for personnel to be carried thereon, failed to attach a certain safety device to said hoist, and placed the hoist upon the job with defective brakes; Count II was a common law action for negligence wherein plaintiffs recited allegations similar to those in the statutory cause of action.

At the trial instructions were tendered to the jury which discussed the effect of the Scaffold Act upon plaintiffs' case. Section 69 of the act, imposing liability, provides:

> "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with the terms thereof. . . .

> "For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured. . . ."

The evidence adduced at the trial indicated that the disassembled hoist supplied by Thomas Hoist, which was assembled by Archer Ironworks, an agent of Sumner Sollitt, was not defective. Testings made after the

440

accident disclosed that had sufficient pressure been applied to the new brakes by the operator, who was an employee of Sumner Sollitt, the hoist would not have fallen. Also, the hoist at the time of the accident was completed only for the carrying of materials. There was no obligation or duty on Thomas Hoist to have men stationed at the job site to prevent the employees of Sumner Sollitt from riding on the hoist in its then condition, and until such time as Thomas Hoist knew that the hoist was to be used by personnel, there was no duty upon it to install the safety device.

Furthermore, the rental agreement covering delivery of possession and custody of said hoist in its disassembled state for the Sumner Sollitt Company included the following terms:

> "After delivery, the entire control and operation of the hoist, elevators, towers, accessories, operators and/or any other item of construction equipment, together with the appliances connected therewith are under the absolute authority of the lessee (Sumner Sollitt Company)."

■ The jury was fully apprised of the foregoing facts, and determined by their verdict that the defendant was not liable to the plaintiffs. We agree with the jury. However, the plaintiffs on appeal argue that various alleged trial errors affected the verdict of the jury. These alleged errors will now be considered.

■■ The first contention of the plaintiffs, that it was error to admit in evidence the practice of the defendant not to set the safety device until notified to do so by the contractor, is without merit. We agree with the contention of the plaintiffs that a custom or practice cannot reduce the standard of care required by the law. (Worcester v. Pure Torpedo Co. (7th Cir), 127 F2d 945; ILP, Customs, vol 15, p 447.) However, in the instant case, this evidence was adduced for the purpose

of showing that the defendant was not negligent, and to show it did not violate the Scaffold Act; it was not adduced for the purpose of showing a practice of the trade which would tend to relieve the defendant of a standard of care.

The alleged erroneously admitted evidence was actually necessitated by the allegations of the plaintiffs' complaints. Count I of these complaints alleged that the defendant wilfully violated the Scaffold Act in that it, among other things, permitted the hoist to be operated before it was safe for workmen to be carried thereon; Count II was based upon the alleged negligence of the defendant in supplying a defective hoist and in failing to set the safety device. Since the plaintiffs framed their complaints around these issues the defendant was entitled to present evidence which disproved that it violated the act, and to disprove that it was guilty of negligence.

█ In the case of Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE2d 687, it was stated at page 194: "The words 'wilful violations' in the Act have been construed to be synonymous with the words 'knowing violations.' " (Gannon v. Chicago, M. St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785.) Since Thomas Hoist did not assemble the hoist and since there was no defect in the hoist as assembled by Archer Ironworks, there could be no "knowing violation" of the act by the defendant. Likewise, since the hoist itself was not defective, Thomas Hoist could not be held liable under a common law negligence theory. The unit that was left at the site was not shown to be defective. The brakes were new. They could be used to stop the hoist, as shown by tests made after the accident occurred. The failure of the defendant to put a Lilly Overwind on the hoist could not have constituted negligence on its part without a showing that the hoist company had knowledge that the hoist was being used, or even ready for use.

442

We hold that the evidence of the practice of the defendant, Thomas Hoist Company, in regard to the setting of the safety device was properly admitted to show that it did not wilfully violate the act and that it was not negligent.

The next point which the plaintiffs raise is that they were prevented from receiving a fair trial by the closing argument made by counsel for the defendant. The record reveals that the closing argument of the defendant contained repeated references to Sumner Sollitt Company. Plaintiffs contend that this was improper since the third-party defendant, Sumner Sollitt, had already received a directed verdict by the trial court.

 Plaintiffs have cited several cases to support the proposition that a verdict unfairly obtained will not be permitted to stand. (Peters v. Chicago Rys. Co., 307 Ill 202, 138 NE 629; Hayes v. New York Cent. R. Co., 328 Ill App 631, 67 NE2d 215.) With these cases we are in full agreement. However, upon a close examination of the record, we do not feel that the plaintiffs were deprived of a fair trial by the closing argument made by counsel for defendant. Admittedly facts were included in this argument which tended to place the blame for the accident upon Sumner Sollitt. But the closing argument was merely one based upon evidence in the record. These facts were presented to the jury during the trial, and consequently a repetition of these was not so improper as to deprive plaintiffs of a fair trial. The jury was entitled to draw inferences from these facts to the effect that Thomas Hoist was not negligent, and if anyone was negligent, it was Sumner Sollitt. In an argument to the jury counsel should be allowed to present the evidence in a favorable light to his client. The purpose of a closing argument is to assist the jury in arriving at a verdict, with all facts presented fairly. Considerable latitude of expression on anything that is in evidence must be allowed counsel. It is within the

function of an advocate to argue that the client is not liable, which was the real purport of the allegedly improper argument in the instant case. (Chicago City Ry. Co. v. Donnelly, 136 Ill App 204.) When arguing within the limits of admitted or uncontroverted facts, counsel should enjoy the greatest latitude consistent with decorum. (Franko v. Crosby, 278 Ill App 416.) Upon an examination of the record, we do not feel that defendant's closing argument was improper, nor did it prevent plaintiffs from receiving a fair trial.

 The plaintiffs next contend that counsel for the third-party defendant committed prejudicial error by bringing out, in the presence of the jury, that plaintiff Hopwood had prosecuted a claim for workmen's compensation. The law is clear that such evidence is inadmissible against a plaintiff in either a negligence action or in a suit under the Scaffold Act. (Rylander v. Chicago Short Line Ry. Co., 17 Ill2d 618, 161 NE2d 812; Bryntesen v. Carroll Const. Co., 27 Ill2d 566, 190 NE2d 315.)

 However, in the instant, case, no such evidence was offered or received. The only reference to any workmen's compensation benefits received by Hopwood occurred upon the direct and cross-examination of one Dr. Rabin, the examining physician, pertaining to his testifying at a commission proceeding. Further, the facts reveal that plaintiff's own attorney was the one who brought out the testimony of the doctor that he had examined Hopwood, and that the X-rays had been given to Hopwood's attorney for the case before the commission. Having brought out this fact of workmen's compensation, the plaintiffs cannot now complain that it was improper for counsel for the third-party defendant to cross-examine the doctor on his prior testimony upon direct examination.

The last contention of the plaintiffs is that they did not receive a fair trial since the court committed gross

error in directing a verdict for the third-party defendant, Sumner Sollitt Company, after the jury had heard so much evidence about the culpability of said third-party defendant, and especially about its failure to notify the principal defendant to set the safety device. Since we have concluded from a review of the entire record that the plaintiffs received a fair trial as against the principal defendant, there is no reason to decide whether or not the court erred in directing a verdict for Sumner Sollitt. The plaintiffs sued Thomas Hoist Company and it was only against this party that they could recover. Any alleged error made as to the third-party defendant need not be discussed.

In view of the fact that we have affirmed the judgment in favor of the defendant Thomas Hoist Company, we do not have to consider the appeal of Thomas Hoist from the order dismissing Sumner Sollitt as a defendant, which was presented to this court only in the event that the verdict against the plaintiffs should be reversed.

Plaintiffs urge several other trial errors which they contend justify a new trial, or a reversal of the verdict. As we have previously mentioned, we have reviewed the entire record and find that plaintiffs received a fair trial. For the foregoing reasons, the verdict of the trial court is affirmed.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.