PRESIDING JUSTICE WILSON
 

 delivered the opinion of the court:
 

 Plaintiffs, husband and wife, brought this action to recover damages for personal injuries and loss of consortium, respectively, sustained as a result of plaintiff-husband’s (Bass) assistance in the unloading of a forklift delivered by defendant Washington-Kinney Company
 
 [1]
 
 to Bass’ place of employment. After a trial by jury, judgment was entered for defendant and against plaintiffs, with costs and charges assessed against plaintiffs. On appeal, plaintiffs contend: (1) the trial court applied an erroneously narrow concept of proximate cause which misled the jury; (2) the trial court improperly allowed defense counsel to force Bass to judge the veracity of a witness; (3) the trial court’s comments to the jury regarding plaintiffs’ unexpected completion of their case were prejudicial to plaintiffs; (4) the trial court erred in refusing to admit Bass’ personnel records; (5) the verdict was against the manifest weight of the evidence; (6) the trial court erroneously allowed unconnected testimony regarding prior unrelated injuries suffered by Bass; (7) the trial court erroneously allowed testimony regarding workers’ compensation; (8) defense counsel’s failure to disclose its expert witnesses prejudiced plaintiffs; (9) the trial court erroneously allowed testimony regarding Bass’ unrelated hospitalizations; and (10) the trial court erroneously admitted evidence regarding Bass’ alcoholism. For the following reasons, we affirm the judgment of the trial court.
 

 The record establishes that at the time of the accident, Bass was employed by the Sovereign Hotel, 1040 West Granville, Chicago, as a building engineer. As part of his employment responsibilities, Bass performed electrical and plumbing work as well as miscellaneous maintenance tasks. On April 19, 1976, Bass was requested by his boss, Fred Wertymer, to help unload a forklift from a pickup truck which was parked in the alley next to the hotel. The hotel did not have a loading dock. When Bass arrived in the alley, four other employees plus Wertymer were already there and the forklift was on the truck bed, near the tailgate. The driver indicated that the forklift had been incorrectly loaded onto the truck. Generally, for a ground delivery, the forks on the lift would face the rear of the truck so that it could be driven down the tailgate ramp. In this case, however, it had been loaded with the forks facing the front of the truck.
 

 Bass testified that Wertymer ordered him to hurry up and help unload the forklift because the hotel was paying the driver by the hour. The driver proceeded to lower the tailgate to a position parallel to the truck bed and secured it with a chain. At this time, Bass was standing on the ground, near the left rear side of the truck and the driver was standing on the right rear side. The driver then instructed Bass as to how to operate the control levers on the forklift so that Bass could slowly move the forklift onto the tailgate as the driver lowered the tailgate to the ground by loosening the chain support. Suddenly, the chain slipped and the tailgate dropped. Before Bass could get out of the way, the lift toppled over and fell onto his back. Several of the men raised the lift off of him and Bass managed to pull himself up. Wertymer then drove Bass to Edgewater Hospital where he was admitted with spinal injuries and released after 30 days. In addition to numerous other post-accident problems, Bass has been sexually impotent since the occurrence.
 

 On cross-examination, Bass stated that he had never been on the bed of the truck and had never received instructions from the driver not to stand behind the forklift. The forklift itself was approximately six feet tall, the controls were approximately 2V2 feet from the bed of the truck and the bed was approximately three feet off the ground. Thus, he could easily reach the controls while he was standing on the ground. Bass did not recall whether the forklift was moving when the chain slipped; but he did recall that the lift was partly on the truck bed and partly on the tailgate when the tailgate started to drop. When Bass tried to support the lift, he may have caused it to fall on its side.
 

 Nathaniel Burns, Bass’ co-worker, testified that the driver activated the forklift and rolled it back to the tailgate at which time the chain either slipped or broke, the tailgate dropped, and the forklift fell off the truck, landing on Bass’ back. Bass attempted to run out of the way, but fell. Prior to the accident, both Bass and Burns had been standing on the ground, close to the left rear side of the truck; the driver was on the right side. All three of them were physically touching the machine in an effort to keep it from falling. Although from his vantage point Burns could not see whether Bass had positioned his hands on the lift controls, he was sure that Bass had not activated the lift. Further, Bass never climbed onto the bed of the truck.
 

 On redirect, Burns stated that the lift had fallen directly from the back of the truck, not sideways. Burns, Bass and the driver attempted to hold it when it started to fall, but as soon as they realized they could not steady it, they let go and ran. The driver was supervising the unloading.
 

 Next, Michael Allison, driver of the delivery truck, testified as an adverse witness pursuant to section 2 — 1102 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2 — 1102.) At the time of the delivery, Allison had been employed by defendant and had been furnished with its truck, forklift and ramp for delivery purposes. It was standard procedure for defendant to issue work service tickets which indicated whether delivery was to be dock or ground, which fact determined the position in which the forklifts would be loaded. Allison recalled previous occasions when forklifts had not been properly loaded for the specific type of delivery; yet, successful deliveries had been accomplished. The work service ticket for the Sovereign Hotel indicated “ground delivery”; however, the lift had been loaded as if for a dock delivery. Generally, in such a situation, the driver would place a two-by-four under the ramp to modify the steep angle of the lowered tailgate. However, the driver had not been provided with a board for the Sovereign Hotel delivery. In readying the forklift for unloading, Allison had activated the controls and moved it to the rear wheel well area of the truck bed.
 

 During examination by defense counsel, Allison testified that on April 19, 1976, he pulled his truck into the alley next to the Sovereign Hotel, unclamped the forklift, and proceeded to lower his tailgate parallel to the bed, securing it with a chain. By twisting the handle controls, he then moved the lift toward the rear wheel well area. At one point, someone from the hotel brought out a two-by-four; however, it was too large to be useful. After Allison moved the lift, he noticed Bass for the first time, standing on the truck bed, on the other side of the lift. Bass had his hands on the controls and asked Allison how to operate it. Allison told him to “hang loose” and that he would explain the controls after they unloaded the lift. Bass then told Allison that they should unload the lift by moving it onto the tailgate and then lowering the tailgate. Allison told him that that was impossible and if he needed any help, he would ask for it. Allison then jumped off the truck and proceeded to lower the tailgate by manipulating the chain. Suddenly, he heard the forklift motor start, and saw Bass and the lift falling down the ramp. The weight of the lift caused the chain to slip and the tailgate dropped to the ground. When Allison reached up to grab the lift, it lurched sideways and hit the ground, falling on top of Bass.
 

 Thereafter, outside the presence of the jury, defendant requested the court’s permission to mention Bass’ chronic alcoholism on the ground that it precipitated certain ailments and injuries for which Bass was claiming damages. In response, counsel for plaintiffs argued that Bass’ alcoholism was unrelated to the issue of liability and testimony regarding his condition would severely prejudice plaintiffs. The trial court agreed that it was unrelated to the issue of liability, but also recognized that there could be problems regarding the issue of damages if such testimony were excluded. After further discussion, the court stated that because there was no evidence that Bass had been drinking or was under the influence of alcohol at the time of the accident, the only grounds for cross-examining Bass as to his drinking would be its relevance to the claim of sexual impotence and the determination of damages. The court then suggested that the parties stipulate to Bass’ alcoholism and also to the fact that there was no evidence that he had been drinking at the time of the accident. Counsel for plaintiffs agreed to the stipulation, but argued that because they would be deleting any costs for the treatment of Bass’ alcoholism from their claim for damages, any evidence regarding treatment for alcoholism or any symptoms during the immediate hospitalization would be irrelevant and highly prejudicial. Thereafter, the trial court read the following stipulation to the jury:
 

 “There will be or I should say that there is a stipulation between the parties that the plaintiff is an alcoholic, and when I say ‘the plaintiff,’ I am talking about John Bass, and he has been an alcoholic for some years. And it is agreed between the parties, it is stipulated between the parties that at the time of this occurrence, there is no evidence that he was under the influence of alcohol, nor that he was drinking alcohol.
 

 Now, that means that both sides agree that there is no evidence of that at the time of the occurrence, at the time he was injured.
 

 If you hear some evidence of alcoholism from witnesses, this evidence is allowed in only for the purpose of damages, if any.”
 

 Next, William Kearney, vice-president of finance of Irmco Properties and Management, management company for the Sovereign Hotel, testified regarding Bass’ pre-application for employment at the Sovereign Hotel. The pre-application was retained by Irmco as a. business record in the ordinary course of business. Notations on the' pre-application which indicated that Bass’ employment references had been checked also had been made in the ordinary course of business. When counsel for plaintiffs offered the pre-application into evidence, the trial court sustained defendant’s objection. Thereafter, outside the presence of the jury, plaintiff made the following offer of proof: (1) the pre-application qualifies as a business records exception to the hearsay rule under Supreme Court Rule 236 (87 Ill. 2d R. 236); (2) Kearney would testify that it is the practice of Irmco to check employment references; and (3) a previous employer of Bass reported that Bass was “an excellent worker, very good mechanic, and very dependable.” On cross-examination, Kearney stated that Irmco had no specific policy regarding the loading and unloading of trucks.
 

 Subsequently, after extensive testimony by several physicians regarding Bass’ injuries, treatment and hospitalizations, plaintiffs, outside the presence of the jury, objected to defendant’s repeated violations of the order in limine which prohibited raising the subject of workers’ compensation. When asked by the court if they wanted to move for a mistrial, plaintiffs declined and failed to make any other motion. The court then advised both counsels to alert their witnesses before they testified that all references to insurance were to be avoided. In response to plaintiffs’ objection, defendant argued that Bass had introduced the subject of workers’ compensation during direct. Similarly, Idell Bass and Kearney also had used the term during direct.
 

 After plaintiffs rested their case, Bass was called by the defense to testify as an adverse witness pursuant to section 2 — 1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2 — 1102), at which time he stated that he had never been treated for loss of sexual function.
 

 Therefore, outside the presence of the jury, plaintiffs’ motion to dismiss the truck driver, Michael Allison, as a defendant was granted. In addition, plaintiffs moved, pursuant to section 2 — 1003(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2 — 1003(c)), for disclosure of all defendant’s expert witnesses. In response, defendant argued that: (1) plaintiffs’ counsel had been given all copies of any and all memoranda, reports, and documents prepared or used by expert witnesses who would be called to testify during discovery; and (2) plaintiffs’ own answers to interrogatories contained the names of all attending and consulting physicians. Defense counsel further argued, “The purpose of discovery is to prevent surprise, not to divulge the trial tactics and strategy of the parties ***.” Upon referring to the historical and practical notes following section 2 — 1003(c), the court interpreted the intent of the legislature to be that parties must disclose the names and addresses of all potential expert witnesses who will testify not from personal knowledge of the facts of the case, but who will render opinions as to hypothetical situations based upon assumed facts. Thus, because defendant’s expert witnesses were all treating medical doctors, section 2 — 1003(c) was inapplicable. The court then denied defendant’s motion for a directed finding and plaintiffs’ motion to prohibit defense witness, Fred Wertymer, from testifying that he had on occasions smelled alcohol on Bass’ breath.
 

 Following extensive medical testimony on defendant’s behalf regarding Bass’ injuries and treatments, Fred Wertymer, Bass’ supervisor at the Sovereign Hotel, testified that on April 19, 1976, he had summoned some of the hotel staff to assist in unloading a forklift from defendant’s truck. Wertymer did not recall whether the driver asked for assistance and Wertymer himself never instructed Bass to remove the lift from the truck. In fact, he told Bass that it was not his job to remove the lift and should not get involved. Contrary to everyone else’s opinion, Bass insisted that the lift could be removed by moving it onto the tailgate and then lowering the ramp. Wertymer saw Bass standing on the truck bed, next to the forklift, operating the lift controls and also saw him fall off the back of the truck with the lift. At the time of the accident, the ramp, secured by a horizontal chain, was inclined toward the ground, with one or two boards positioned underneath it. The pressure on the ramp forced the chain to slide up the ramp so that the ramp could no longer support the weight of the lift. Wertymer further stated that several months prior to the accident, he had expressed his concern to Bass about working while under the influence of alcohol. On cross-examination, Wertymer testified that the ramp appeared to be too steep and was improperly positioned for the driver to maneuver the forklift off the truck.
 

 Thereafter, following a discussion in chambers regarding jury instructions, defendant rested its case and closing arguments ensued. Subsequently, the jury returned with its verdict, finding for defendant and against plaintiffs, assessing plaintiffs with defendant’s costs and charges. Following denial of all post-trial relief, plaintiffs filed their appeal.
 

 Opinion
 

 Plaintiffs first contend that the trial court applied an erroneously narrow concept of proximate cause when it refused plaintiffs’ instruction No. 10, which was the long form of Illinois Pattern Jury Instruction (IPI), Civil, No. 15.01 (2d ed. 1971), and accepted defendant’s instruction No. 4, which was the short form of IPI Civil No. 15.01.
 

 The long form of IPI Civil No. 15.01 as submitted by plaintiffs states:
 

 "When I use the expression ‘proximate cause’, I mean any cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]”
 

 The short form as submitted by defendant deletes that portion of the instruction which appears in brackets. Plaintiffs contend that by using the short form, the court “held in effect that only the last act could be a legal cause of the injury,” thus, ignoring the prior alleged negligent acts or omissions of the defendant. For the following reasons, we find that the trial court properly refused plaintiffs’ tendered instruction and accepted that tendered by defendant.
 

 The “Notes on use” and “Comment” which follow IPI Civil No. 15.01 state, respectively:
 

 “This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material should be used.”
 

 “When the only possible causes of the occurrence are the conduct of plaintiff and defendant, the [long form] would be improper because it would prejudice the defendant’s defense of contributory negligence.”
 

 In Budovic v. Eschbach (1953), 349 Ill. App. 163, 110 N.E.2d 477, the appellate court further clarified the distinctions between the long and short forms of IPI Civil No. 15.01 when it held that absent evidence that a third party is a contributing cause, the short form is the proper instruction. In Dolan v. Crammond (1979), 71 Ill. App. 3d 289, 389 N.E.2d 206, an appeal on the issue of damages only, plaintiffs argued that the trial court erred in refusing the long form of IPI Civil No. 15.01 because it would have assisted the jury in properly analyzing the medical and legal relevance of plaintiffs’ prior and subsequent injuries. Relying on the “Notes on use” to IPI Civil No. 15.01, the Dolan court held that because there was no evidence of a concurring or contributing cause to the automobile collision as defined by the “Notes on use,” the long form was properly refused. Adopting the rationale of both Budovic and Dolan, we conclude that because there is no evidence of a third party’s negligence in the present case, the long form of IPI Civil No. 15.01 is inapplicable. See Reuter v. Kocan (1983), 113 Ill. App. 3d 903, 910, 446 N.E.2d 882, 886.
 

 Plaintiffs further argue that the adoption of the comparative negligence doctrine in Illinois renders the rationale for the use of the short form as articulated in the “Comment” to IPI Civil No. 15.01 obsolete. We disagree. Contrary to plaintiffs’ literal interpretation, Alvis v. Ribar (1981), 85 Ill. 2d 1, 421 N.E.2d 886, did not abolish the concept of contributory negligence. Rather, it altered the effect of a finding of contributory negligence from an absolute bar to plaintiff’s recovery to a proportionate diminution of damages awarded to plaintiff. Thus, consideration of plaintiffs’ contributorily negligent acts or omissions is not an obsolete practice; only the pre-AZms applicability of that consideration is obsolete. Accordingly, the rationale expressed by the IPI committee for the use of the long form of IPI Civil No. 15.01 and subsequently adopted by the courts remains relevant.
 

 In addition, plaintiffs argue that use of the short form misled the jury by limiting causation to the last act. In support of this argument plaintiffs rely on Graves v. Wornson (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692, in which plaintiffs appealed a jury verdict which had found defendant not guilty of negligence when the semi-trailer he had been driving swerved from its lane and collided with plaintiff’s automobile. The reviewing court held, inter alia, that the trial court erred in submitting defendant’s tendered instruction which included language referring to “sole proximate cause” on the ground that the record did not support the theory of the instruction, i.e., there was no evidence of a “sole proximate cause.” We find Graves factually inapposite and of no persuasive value.
 

 Moreover, contrary to plaintiffs’ characterization of the short form of IPI Civil No. 15.01 as “limiting,” we find the language sufficiently broad to include all alleged acts of negligence. Further, the criterion used by Illinois courts in determining the propriety of submitted instructions is whether the jury was fairly, fully and comprehensively informed as to the relevant principles, considering the instructions in their entirety. (Pietka v. Chelco Corp. (1982), 107 Ill. App. 3d 544, 554, 437 N.E.2d 872.) In the present case, in addition to IPI Civil No. 15.01, we find that the term “proximate cause” was further clarified by jury instructions relating to contributory negligence, burden of proof, allegations of defendant’s negligence, and comparative negligence. Accordingly, considering the instructions as a whole, we conclude that the jury was sufficiently informed and was not misled.
 

 Plaintiffs next contend that the trial court committed reversible error when it erroneously allowed defense counsel to force the plaintiff to judge the veracity of the witness, thereby usurping a function exclusively within the province of the jury.
 

 During cross-examination, after Bass admitted that he had touched the controls on the forklift while it was on the truck bed, the following colloquy ensued:
 

 “DEFENSE: Now, you heard your witness Mr. Burns yesterday testify that at no time did your hands ever touch the controls.
 

 PLAINTIFFS’ COUNSEL: Objection, Your Honor. That kind of question is improper.
 

 COURT: Sustained.
 

 DEFENSE: If a witness came into this courtroom and testified under oath —
 

 PLAINTIFFS’ COUNSEL: Same objection.
 

 COURT: He wasn’t finished with his question.
 

 DEFENSE: If a witness came into this courtroom and testified under oath that at no time did your hands ever touch the controls of that machine, that witness would be mistaken, is that correct?
 

 PLAINTIFFS’ COUNSEL: Objection, Your Honor.
 

 COURT: I’ll take the answer.
 

 PLAINTIFFS’ COUNSEL: If I may, Your Honor, I think that kind of question of characterizing someone else’s testimony, whether it be hypothetical or by name, is held to be improper.
 

 COURT: Well, I have already ruled. I will stay with the ruling. Answer the question. * * *
 

 BASS: Okay. Could it be true that Mr. Burns could have not been looking at the time when I reached up to put my hand on the control?”
 

 In support of their position, plaintiffs rely on Teece v. Bieber (1944), 323 Ill. App. 647, 56 N.E.2d 665 (abstract); Ryan v. Monson (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449; Champion v. Knasiak (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62; and Greig v. Griffel (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660; none of which we find persuasive of their argument. In both Teece and Ryan, error was found in cross-examination which forced the defendant to judge whether testimony of prior witnesses was true or false. The Ryan court specifically noted that such questioning was prejudicially erroneous because it failed to include the possibility of mistake on the part of the witness. In the present case, Bass was asked whether a witness could have been mistaken in his observation, not whether a witness’ testimony was true or false. In Champion, counsel for plaintiffs specifically asked defendant to comment on the alleged inconsistencies between his testimony and out-of-court statements made by a prior witness. The Champion court held that such conduct constituted error on the ground that the out-of-court statements had been used in an attempt to impeach the defendant. By contrast, we find no evidence in the present case that the purpose of defense counsel’s question was to impeach plaintiff. It merely introduced the possibility of mistake for consideration by the jury which does not constitute reversible error.
 

 Finally, although plaintiffs rely on Greig v. Griffel (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660, as support for their position, we find it more accurately supports defendant’s argument. In Greig, counsel for plaintiff was permitted to ask one of the defense witnesses whether defendant’s testimony was “at variance” with that particular witness’ answers. In affirming the trial court’s ruling which allowed the testimony, the reviewing court stated:
 

 “We are inclined to believe that a question involving a variance in the testimony, or whether a previous witness had been wrong or mistaken, does not necessarily force the witness being questioned to judge the truthfulness and veracity of the prior witness.” (49 Ill. App. 3d 829, 842.)
 

 Plaintiffs argue that the Greig court qualified its finding by noting the particular fact situation before it in which: (1) a party to the action was not forced to answer the question; (2) the witness had no trouble answering the question; and (3) it was an isolated question which received no particular emphasis. We acknowledge that these considerations were mentioned in Greig, but do not see them as prerequisites to the conclusion that such questioning does not constitute reversible error. Further, while we agree with the Greig court that such questioning is always improper and recognize that there is a fine line between questions regarding mistake and those asking for a judgment of truthfulness, after considering the record at bar, we do not find that the line to reversible error was crossed.
 

 We next address plaintiffs’ contention that the trial court committed prejudicial error when it commented to the jury that, “The plaintiffs unexpectedly have rested their case.” We disagree for two primary reasons.
 

 First, after reviewing the trial court’s comment in its entirety, we note that immediately prior to its comment regarding plaintiffs, the court stated, “The defendant does not have any witnesses.” It is our opinion that the trial court’s comments attributed delay in trial to both parties equally, thus, prejudicing neither at the expense of the other. Second, in their brief, plaintiffs conveniently overlooked the fact that later that day, in chambers, the trial court expressed its concern that its remarks may have prejudiced plaintiffs and indicated that it would say something to the jury the next day to clear up any misconception. The following day, in chambers, counsel for plaintiffs asked the court to “speak to the jury as to whether or not anybody got the impression that the plaintiff had not put on all of his case or something to that effect.” Thereafter, the court made the following statement to the jury:
 

 “Yesterday, when we adjourned, I made some remarks about the plaintiffs unexpectedly resting. I have since been reminded by the plaintiffs that that was not entirely so. Counsel indicated that as the lawyer for the plaintiffs.
 

 I can tell you, from my personal experience of over 25 years in trying lawsuits before I became a judge, that it is very difficult to corroíate [sic] and program witnesses and to get things lined up. The logistics are quite an effort. I think both attorneys have done well. I would not want any of the remarks I made to reflect in any way on your decisions. I direct you, as a matter of fact, not to have that interfere with any of your judgments in connection with the evidence you hear.”
 

 Accordingly, considering the nonprejudicial effect of the original comments (see Vinke v. Artim Transportation System, Inc. (1980), 87 Ill. App. 3d 400, 408 N.E.2d 1112) and the court’s subsequent admonishment to the jury to disregard those comments (see Felker v. Hobbs (1970), 124 Ill. App. 2d 63, 260 N.E.2d 79), we do not find that such comments constituted reversible error.
 

 Next, we address plaintiffs’ contention that the trial court improperly excluded Bass’ pre-application for employment from evidence and improperly admitted defendant’s forklift invoice. Regarding the preapplication,- plaintiffs maintain that it tended to show that Bass had a good prior work record and it should have been admitted under Supreme Court Rule 236 (the Rule) (87 Ill. 2d R. 236), the business records exception to the hearsay rule, which provides, in pertinent part:
 

 “(a) Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility.”
 

 As the aforementioned indicates, there are two prerequisites to admission of a business record under the Rule: (1) it must have been made in the regular course of business, and (2) it must have been regular business practice to have made such a record. In the present case, William Kearney, a vice-president of Irmco, testified as to both prerequisites. Thus, the pre-application itself was admissible. Defendant maintains, however, that the notations on the application which indicated that Bass’ employment references had been verified were inadmissible as “hearsay within hearsay.” In so arguing, defendant characterized the notations as “statements” and “descriptions of telephone conversations.” However, Kearney’s testimony indicates that there were only a “number of arrows and diagrams to indicate that certain persons had been called and checked.” In either case, we do not find that the information contained on the application constituted hearsay within hearsay. (Myers v. Spohnholtz (1973), 11 Ill. App. 3d 560, 297 N.E.2d 183.) In Myers, the court was confronted with a similar question when defendant sought to admit into evidence personal record cards of the defendant union which contained pertinent notations regarding plaintiff’s union activities. The reviewing court held that the cards with notations were admissible on the ground that they were kept in the usual and ordinary course of business.
 

 In the present case, counsel for plaintiffs made the following offer of proof regarding the pre-application: (1) the document would qualify as a business records exception to the hearsay rule; and (2) if asked, the witness would state, inter alia, that a particular past employer of Bass described Bass as having been an excellent worker. Although we have concluded that the pre-application itself was admissible under the Rule, the language of the first sentence of the Rule makes it apparent that it is only the business record itself which is admissible, and not the testimony of a witness who makes reference to the record. Once the custodian of the records has testified to the manner in which the records were kept, his function is completed. (Smith v. Williams (1975), 34 Ill. App. 3d 677, 680, 339 N.E.2d 10.) Thus, we conclude that the trial court properly excluded Kearney’s testimony as to the contents of the records. Finally, although we find that the pre-application itself was admissible, we do not agree with plaintiffs that they were prejudiced by its exclusion. Accordingly, we find that any error committed by the trial court in this regard was harmless. Nitrin, Inc. v. Bethlehem Steel Corp. (1976), 35 Ill. App. 3d 596, 342 N.E.2d 79.
 

 Regarding admission of defendant’s forklift invoice, we note that plaintiffs’ argument is void of citation to any legal authority as support for their position. Because a reviewing court is entitled to have issues clearly defined, with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research (Pecora v. Szabo (1982), 109 Ill. App. 3d 824, 441 N.E.2d 360), we deem the issue of admissibility of the invoice waived. Stach v. Sears, Roebuck & Co. (1981), 102 Ill. App. 3d 397, 429 N.E.2d 1242.
 

 We next address plaintiffs’ contention that the jury’s verdict was against the manifest weight of the evidence. Plaintiffs maintain that the uncontested fact that the forklift was improperly loaded by defendant created a situation of risk which rendered defendant liable for negligence. Plaintiffs further contend that this risk situation was compounded by defendant’s failure to supply a delivery truck equipped with a properly angled ramp and two-by-four boards with which to alter the angle of the ramp. Defendant counters with the argument that it was Bass’ unauthorized operation of the forklift which caused his injury and not the loading or unloading of the forklift.
 

 While the record reveals extensive conflict in testimony as to exactly where Bass was standing and under whose orders, if any, he operated the forklift controls, we are of the opinion that the record is supportive of defendant’s position that Bass’ unauthorized actions were the proximate cause of his injury. In making this determination, we are cognizant of the well-established rule that resolution of contradictory testimony is not a function of the reviewing court and that even if there is conflicting evidence which is substantially equal on pertinent factual questions (Bentley v. City of Chicago (1979), 79 Ill. App. 3d 1028, 398 N.E.2d 912), the reviewing court cannot reevaluate the evidence and set aside a jury verdict merely because it could have reached a different conclusion. (Ryon v. Javior (1979), 69 Ill. App. 3d 946, 387 N.E.2d 936.) Rather, it is the jury’s function to evaluate the weight of the evidence and to assess the credibility of the witnesses, and its findings will not be disturbed unless the verdict was palpably erroneous, the opposite verdict is clearly compelled, or the findings appear to be unreasonable, arbitrary and not based upon the evidence. (Pietka v. Chelco Corp. (1982), 107 Ill. App. 3d 544, 553, 437 N.E.2d 872.) In light of the overwhelming evidence which supported defendant’s theory, we conclude that the jury’s verdict was neither unreasonable nor palpably erroneous. Accordingly, we hold that the verdict was not contrary to the manifest weight of the evidence.
 

 Although the remaining five evidentiary errors alleged by plaintiffs relate primarily to the issue of damages, which, due to a finding of liability against plaintiffs, was never reached by the jury, in the interests of reviewing all allegations that impact upon the fairness of plaintiffs’ trial, we shall briefly address these alleged errors.
 

 First, plaintiff contends that the trial court erred when it permitted defense counsel to ask Idell Bass about Bass’ hospitalizations and treatments, if any, prior to and after the accident. Plaintiff maintains that such questioning was a ploy to convey improper facts to the jury and that defense counsel never made any attempt to connect these hospitalizations and treatments to the claimed injuries.
 

 Upon reviewing that portion of the record which relates to the two exchanges cited by plaintiffs in their brief, we note that plaintiffs objected only to the relevancy and form of the question regarding the first exchange and raised no objection to the second exchange. Therefore, because plaintiff failed to raise a specific objection at trial alleging insufficient foundation (Papageorgiou v. F.W. Woolworth Co. (1978), 66 Ill. App. 3d 873, 383 N.E.2d 1346), and further failed to move to strike the unconnected testimony at the end of defendant’s case (Greig v. Griffel (1977), 49 Ill. App. 3d 829, 841, 364 N.E.2d 660), we find that plaintiffs have waived this issue for review.
 

 Next, plaintiffs contend that, contrary to the court’s ruling on plaintiffs’ motion in limine prior to trial, defense counsel was permitted to repeatedly introduce the subject of workers’ compensation and social security benefits into the trial to the prejudice of plaintiffs. Preliminarily, we note that our review of the record has failed to reveal the motion in limine referenced by plaintiffs. However, we do recognize the established law in Illinois that evidence regarding claims for workers’ compensation is inadmissible against a plaintiff in a negligence action (Hopwood v. Thomas Hoist Co. (1966), 71 Ill. App. 2d 434, 444, 219 N.E.2d 76), and we shall review plaintiffs’ contention accordingly.
 

 First, plaintiffs’ statement that the subject of workers’ compensation was “first raised” by defendant is patently untrue. Plaintiffs themselves introduced the subject of workers’ compensation when querying Bass during direct examination as to the payment of certain hospital and doctors’ bills. Further, during direct examination of their witness, Dr. Riera, plaintiffs elicited testimony regarding payment of bills not covered by workers’ compensation. In addition, counsel for plaintiffs also emphasized the subject of insurance when, during their cross-examination of defense witness, Dr. Renaud, counsel asked Renaud if he “made a lot of reports to insurance companies.” Having introduced and repeatedly interjected the subject of insurance at trial, plaintiffs cannot now complain that the comments made by witnesses while being examined by defense counsel were improper. (See Hopwood v. Thomas Hoist Co. (1966), 71 Ill. App. 2d 434, 444, 219 N.E.2d 76.) Moreover, because the comments objected to by plaintiffs were inadvertent responses, not intentionally elicited by defense counsel, we hold that the insurance references do not constitute grounds for mistrial or reversal. (Kitsch v. Goode (1977), 48 Ill. App. 3d 260, 266, 362 N.E.2d 446.) Further, although reference to insurance during a trial is generally improper, it is not per se reversible, as prejudice must be shown. (Joynt v. Barnes (1979), 71 Ill. App. 3d 187, 198, 388 N.E.2d 1298.) In the present case, because the issue of damages was never reached by the jury, plaintiffs were clearly not prejudiced in any way. Regarding plaintiffs’ allegation that they were prejudiced by comments regarding social security benefits, we note that the only specific question relating to such benefits was asked by counsel for plaintiffs.
 

 Plaintiffs next contend that the trial court erred in failing to bar the testimony of defendant’s medical experts, Dr. Branovacki, Dr. Renaud, Dr. Tausk and Dr. Dolar, on the ground that they were not disclosed to plaintiffs in violation of section 2 — 1003(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2 — 1003(c)). Section 2 — 1003(c) states:
 

 “(c) A party shall not be required to furnish the names or addresses of his or her witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure fair and equitable preparation of the case by all parties.”
 

 Plaintiffs maintain that in addition to filing interrogatories requesting disclosure, they also filed a request to produce names of expert witnesses at the commencement of trial and before jury selection. In response, defendant argues that plaintiffs suffered no prejudice by its failure to disclose because plaintiffs had in their possession copies of any and all memoranda, reports and documents prepared or used by the expert witnesses and, thus, had the names readily available and could not realistically claim surprise. While it appears that defendant failed to abide by the mandates of section 2 — 1003(c), imposition of sanctions against a party for noncompliance with discovery rules is within the discretion of the trial judge (Beasley v. Huffman Manufacturing Co. (1981), 97 Ill. App. 3d 1, 4, 422 N.E.2d 241), who considers: (1) the surprise, if any, to opposing counsel; (2) timely objection; and (3) good faith of the party calling the witness. (Kyowski v. Burns (1979), 70 Ill. App. 3d 1009, 1018, 388 N.E.2d 770.) In the present case, although plaintiffs raised a timely objection to the testimony of Dr. Branovacki, they did not object to the testimony of Dr. Renaud, Dr. Tausk or Dr. Dolar. Thus, they have waived their objection regarding the testimony of the latter three. Further, in light of the uncontroverted fact that plaintiffs had copies of the reports filed by Dr. Branovacki regarding Bass’ claim for social security benefits, we fail to see how plaintiffs could have been surprised by Dr. Branovacki’s testimony or in any way prejudiced thereby. While we do not condone defendant’s failure to disclose, we do not agree with plaintiffs that the omission constituted prejudicial error. Therefore, we find the trial court did not abuse its discretion in allowing the testimony of defendant’s medical experts.
 

 Next, plaintiffs contend that the trial court erroneously allowed testimony of unrelated hospitalizations into evidence which defendant failed to connect to the injuries claimed by Bass as a result of the forklift accident. It is a well-established rule in Illinois that when counsel has failed to connect up evidence so as to render it admissible, opposing counsel must move to strike the unconnected evidence or else waive the issue. (Greig v. Griffel (1977), 49 Ill. App. 3d 829, 841, 364 N.E.2d 660.) Because plaintiffs failed to move to strike the testimony complained of, we deem the issue waived. Moreover, we note that because this issue relates to the determination of damages only, any error by the trial court would be harmless error inasmuch as the issue of liability was decided adversely to plaintiffs. Kortlander v. Chicago Transit Authority (1965), 56 Ill. App. 2d 48, 53, 205 N.E.2d 516.
 

 Lastly, plaintiffs contend that the trial court erroneously admitted testimony regarding Bass’ alcoholism into evidence. Plaintiffs argue that in response to their motion in limine requesting exclusion of any evidence of Bass’ alcoholism, the trial court had ruled that it would allow such evidence on the “promise” by defense counsel that he would provide evidence that Bass’ alcoholism was related to and a cause of Bass’ claimed sexual impotency. Because no such evidence was introduced, plaintiffs claim the testimony regarding alcoholism was irrelevant and “extraordinarily prejudicial.”
 

 The record, however, does not support plaintiffs’ argument. Outside the presence of the jury, both counsels and the trial judge discussed at length the impact of and necessity for testimony regarding Bass’ alcoholic condition. As a result, the trial court concluded:
 

 “COURT: [T]he only way that any cross examination could be conducted of [Bass] in regards to drinking would be that it relates to the damages ***.
 

 And it was my understanding *** that the sexual impotence, of which the plaintiff’s theory is that it is related to the trauma, that is, the accident, was contested by the defense.
 

 The defense has been — at least as I understand it, the defense was going to offer evidence that the sexual impotence was not the traumatic experience, but was the result of alcoholism.
 

 Did I understand that correctly?
 

 DEFENSE: Correct.”
 

 As the foregoing illustrates, evidence of Bass’ alcoholism was not conditioned solely upon defendant’s “promise” to connect the condition to sexual impotence. Rather, the primary purpose for allowing the testimony was its impact on the issue of damages. This is further evidenced by the stipulation read to the jury which stated, in part: “If you hear some evidence of alcoholism from witnesses, this evidence is allowed in only for the purpose of damages, if any.” Accordingly, because admission of testimony regarding Bass’ alcoholism was not conditioned solely upon defendant’s ability to connect it to the claim of sexual impotence and because the trial court definitively instructed the jury as to the purpose for which such testimony was to be considered, we find that the testimony was properly admitted as relevant to the issue of damages and did not prejudice plaintiffs’ right to a fair trial.
 

 Based on the aforementioned, we affirm the judgment of the circuit court of Cook County.
 

 Affirmed.
 

 LORENZ and MEJDA, JJ., concur.
 

 [1]
 

 Upon plaintiffs’ motion, Michael Allison, driver of the pickup truck, was dismissed as a party defendant.