JAMES D. GOULD *et al.*, Plaintiffs-Appellees, v. CAMPBELL'S AMBU-LANCE SERVICE, INC., Defendant-Appellant.

Fifth District   No. 5—83—0627

Opinion filed December 5, 1984.

Steven P. Sanders and Ann M. Effinger, both of Shepherd, Sandberg & Phoenix, P.C., of St. Louis, Missouri, and Michael R. Jones, of Branson, Jones & Branson, of Centralia, for appellant.

Henry D. Sintzenich, of Lakin & Herndon, P.C., of East Alton, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs, James D. Gould, Vincent Dellamano and Peter Gillespie, brought an action against defendant, Campbell's Ambulance Service, Inc., seeking damages for retaliatory discharge. A jury awarded each plaintiff compensatory damages and defendant appeals. There are two issues presented for our review: (1) whether plaintiffs' discharge contravened a public policy; and (2) whether the evidence presented established that plaintiffs were unjustly discharged by defendant in retaliation for plaintiffs' complaints concerning the qualifications of a co-worker, Donald Dugan.

We first note that defendant has included in its brief a number of evidentiary issues which were not raised in its post-trial motion. In an order entered March 30, 1984, we allowed plaintiffs' motion to strike those portions of defendant's brief which related to the evidentiary issues raised by defendant on appeal but not in its post-trial motion. We abide by our previous order. Supreme Court Rule 366(b)(2)(iii) (87 Ill. 2d R. 366(b)(2)(iii)) provides that a party who appeals from the denial of his post-trial motion in a jury case may not urge as error any point, ground, or relief not specified in the motion.

The record establishes that plaintiffs were all employed by defendant as emergency medical technicians in Alton. Plaintiffs were at-will employees and had no employment contract with defendant. Plaintiffs were terminated from their employment on March 19, 1980.

Plaintiffs' complaint alleged that they were terminated from their employment because they had expressed concern that Donald Dugan did not have the type of emergency medical technician certification required by a city of Alton ordinance and that defendant was operating in violation of the ordinance. The city of Alton ordinance upon which plaintiffs relied stated, in pertinent part, as follows:

"Every ambulance attendant driver must be qualified as provided hereafter, except that an ambulance service may provide such ambulance with one unqualified driver or attendant during a period not to exceed ninety (90) days, during which period such unqualified person is actively engaged in acquiring the necessary qualifications provided in subsection 4 below. A qualified ambulance attendant and driver shall

\* \* \*

4. Be certified as an emergency medical technician by the state of Illinois or licensed physician, nurse, physician's assistant, or other licensed medical professional person." Alton, Il., Ordinances ch. 23, sec. 4—23—8(c)(4) (1979).

Defendant filed a motion for summary judgment, alleging, *inter alia*, that plaintiffs failed to allege "any clear and compelling mandated public policy against the discharge of Plaintiffs by Defendant." The trial court denied defendant's motion for summary judgment and the cause proceeded to trial.

James Gould testified that, prior to his discharge, he discussed with defendant's co-managers, Maurice Hand, Jr., and James Eugene Fowler, the fact that Mr. Dugan was not certified as an emergency medical technician by the State of Illinois. Mr. Gould stated that he also complained about Mr. Dugan's work habits but was told by defendant's co-managers that he would either have to work with Mr. Dugan or leave defendant's employment. Mr. Gould testified that he believed he was fired because he "was threatening to go to the City Council with Mr. Dugan's working on the ambulance and not being certified by the State of Illinois." Mr. Gould, however, could not specifically recall whether he informed defendant's management that he planned to complain to the city council of Alton. Mr. Gould stated that he did in fact complain to the mayor of the city of Alton and an alderman but that no action by the city was taken. Mr. Gould testified that he was later informed by Mr. Hand that he was terminated because he was a troublemaker and did not get along with Mr. Dugan.

Peter Gillespie testified that he asked Mr. Hand and Mr. Fowler not to schedule him to work with Mr. Dugan because he felt that Mr. Dugan's competency was questionable. Mr. Gillespie said he was told by Mr. Fowler to either work with Mr. Dugan or leave defendant's employment. Mr. Gillespie said that on the night he and the other plaintiffs were terminated, he told Mr. Fowler that defendant was "going to have to get" Mr. Dugan certified by the State because it might make defendant look bad. Mr. Gillespie testified that he assumed he was terminated from his employment for "stirring trouble

with Mr. Dugan's certification.".

Vincent Dellamano testified that he did not complain to management about Mr. Dugan. Mr. Dellamano stated that he was told that he was fired for causing a disturbance but that he believed that he was terminated due to his friendship with those who voiced complaints about Mr. Dugan.

Roger Campbell, president of defendant, testified that it was his policy to require that ambulance attendants be certified either by the National Registry of Emergency Medical Technicians or by the State of Illinois. Mr. Campbell stated that he believed that either national or State certification satisfied the Alton ordinance governing the qualifications of emergency medical technicians. Mr. Campbell testified that plaintiffs never complained to him about Mr. Dugan's certification.

Donald Dugan testified that he was employed as a captain on the city of Alton fire department and worked part-time as an ambulance attendant. Mr. Dugan stated that at the time he was hired as an ambulance attendant and during the period relevant to this litigation he was certified by the National Registry of the Emergency Medical Technicians but was not certified by the State of Illinois.

Mr. Hand testified that Mr. Gould and Mr. Gillespie frequently complained about working with Mr. Dugan. Mr. Hand stated that none of the plaintiffs ever complained at monthly staff meetings about Mr. Dugan's emergency medical technician certification. Mr. Hand testified that two or three months prior to Mr. Gould's termination, Mr. Gould asked whether Mr. Dugan had a valid emergency medical technician card. Mr. Hand related that he checked Mr. Dugan's personnel file and subsequently informed Mr. Gould that it contained a copy of a valid emergency medical technician card for Mr. Dugan. According to Mr. Hand, on the night plaintiffs were terminated, he asked each of them what the problem was and they all replied that they would not work with Mr. Dugan. Mr. Hand stated that he asked each plaintiff if he was refusing to work with Mr. Dugan. When each plaintiff responded affirmatively, his employment was terminated.

Mr. Fowler corroborated Mr. Hand's testimony that plaintiffs did not complain about Mr. Dugan's emergency medical technician certification at the monthly staff meetings and that plaintiffs were told that they were being fired for refusing to work with Mr. Dugan.

Marvin E. Reed, the Emergency Medical Services Training Coordinator for the Illinois Department of Public Health, testified that in December 1980, after plaintiffs' discharge, the Illinois legislature enacted the Emergency Medical Services Systems Act (1980 Ill. Laws 3939-50), which required that emergency medical technicians be certi-

fied by the Illinois Department of Public Health. Mr. Reed indicated that prior to the Emergency Medical Services Systems Act there was no requirement that an ambulance attendant be certified by the State. Mr. Reed also testified that the examination used by the National Registry of the Emergency Medical Technicians is the same examination used for purposes of State certification of emergency medical technicians but that the national and State training requirements are somewhat different.

Defendant moved for a directed verdict at the close of plaintiffs' case and renewed its motion at the close of all the evidence. In arguing for a directed verdict, defendant again suggested that the city of Alton ordinance could not reflect a public policy for purposes of stating a cause of action for retaliatory discharge. The trial court denied both of the defendant's motions for a directed verdict.

On appeal, defendant maintains, as it did in the trial court, that plaintiffs have failed to state or establish a cause of action for retaliatory discharge. The principal thrust of defendant's contention is that there was no public policy in Illinois with respect to certification of emergency medical technicians at the time of plaintiffs' dismissal. Defendant urges that there was no clearly mandated public policy which was contravened by the termination of plaintiffs' employment. We disagree.

■■ What constitutes a clearly mandated public policy which may give rise to a cause of action for retaliatory discharge was discussed by our supreme court in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. In *Palmateer* the court stated:

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (*Smith v. Board of Education* (1950), 405 Ill. 143, 147.) Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79.

Here plaintiffs claim that they were discharged from their employment for questioning the certification of an ambulance attendant. Defendant responds that an ordinance such as the city of Alton ordi-

nance, which governs the qualifications of ambulance personnel, cannot form the basis of a clearly mandated public policy. An examination of the *Palmateer* decision leads us to conclude otherwise. We are of the opinion that public policy demands that employees who voice objections concerning the qualifications of an emergency medical technician should be protected from being discharged from their employment as a result of such objection. To hold otherwise would discourage employees from questioning the qualifications of co-workers; and, in the sensitive area of emergency medical care, such a situation would be intolerable. The public has a right to expect that emergency medical technicians are properly certified in accordance with the law, regardless of whether the law governing these individuals is Federal, State or local.

Defendant alternatively argues that even if public policy can arise from a municipal ordinance, the trial court erred in its construction of the city of Alton ordinance. Defendant asserts that the language in the ordinance which allows an ambulance attendant to be an "other licensed medical professional person" permitted Mr. Dugan to operate with a certification by the National Registry of the Emergency Medical Technicians. Essentially, defendant suggests that the Alton ordinance did not require that Mr. Dugan be certified by the State of Illinois. Assuming, *arguendo*, that defendant is correct in this assertion, we fail to perceive how such fact would affect the instant case. The fact remains that plaintiffs alleged that they questioned whether Mr. Dugan was in compliance with the Alton ordinance and that, as a consequence, they were discharged from their employment. Whether Mr. Dugan was, in fact, in compliance with the Alton ordinance does not alter plaintiffs' claim of retaliatory discharge. Even if plaintiffs were mistaken in their belief that the Alton ordinance required State certification of emergency medical technicians, their discharge from employment because they brought this matter to defendant's attention would still contravene public policy.

■■■ Defendant also contends that plaintiffs' evidence was insufficient to support the verdict. We do not agree. It is the jury's function to evaluate the weight of the evidence and to assess the credibility of the witnesses; and a reviewing court will not disturb a jury's findings unless the verdict is palpably erroneous, an opposite verdict is clearly compelled, or the findings are unreasonable, arbitrary and not based upon the evidence. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 728, 457 N.E.2d 85, 97.) In the case at bar plaintiffs testified that they were discharged because they had questioned the qualifications of Mr. Dugan. Defendant's co-managers, Mr. Hand

and Mr. Fowler, on the other hand, testified that plaintiffs were discharged solely because they refused to work with Mr. Dugan. The conflicting testimony presented a question for the jury to decide, and we will not second-guess its determination.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

WELCH, P.J., and HARRISON, J., concur.