STEWART R. BLUESTEIN, Plaintiff-Appellant, *v.* THE UPJOHN COMPANY, Defendant-Appellee.

First District (4th Division)    No. 80-2226

Opinion filed December 17, 1981.

French and Rogers, of Chicago (Richard G. French, of counsel), for appellant.

Burditt & Calkins, of Chicago (George M. Burditt and Robert G. Epsteen, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Stewart Bluestein, brought an action to recover damages for personal injuries which allegedly resulted from his ingestion of Cleocin, a drug manufactured by the Upjohn Company. The complaint alleged liability on the bases of negligence, strict liability, breach of warranty and wilful and wanton conduct. The trial court directed a verdict for Upjohn on the breach of warranty count. Although the jury returned a general verdict for the plaintiff, it answered "no" to a special interrogatory that asked "[w]as Cleocin a proximate cause of the injuries claimed by Stewart Bluestein?"[1] Because of this answer the trial court entered judgment in favor of Upjohn. The plaintiff's argument on appeal is that the trial court erred in entering judgment on the special interrogatory and in directing the verdict on the breach of warranty count. The plaintiff also contends that certain trial errors occurred which mandate a reversal. These will be detailed later in the opinion.

The plaintiff was born on April 3, 1955. During his teenage years, he experienced difficulty with acne, which prompted him to consult Dr. Irving Distelheim, a dermatologist. Dr. Distelheim began treating the plaintiff on January 8, 1971. He prescribed Cleocin from January to July of 1973 after hearing that Cleocin was effective in the treatment of acne.

On April 23, 1973, the plaintiff began to experience abdominal

---

[1] The jury also made a special finding that Upjohn was not guilty of wilful and wanton conduct.

cramps, vomiting and diarrhea. He visited Dr. Andleman, his regular physician, who also prescribed Cleocin. A few weeks later it became apparent that the plaintiff was suffering from inflammatory bowel disease and required hospitalization. From April of 1973 through November of 1979, the plaintiff was hospitalized 34 times for surgical procedures and other treatment resulting from his inflammatory bowel disease. The extensive surgery culminated in the removal of the plaintiff's colon and portions of his small intestine, rectum and anus.

At trial, Upjohn did not dispute the severity of the plaintiff's injuries. Rather, it took the position that his injuries were the result of a preexisting bowel condition called Crohn's disease and were not related to the ingestion of Cleocin. Upjohn presented expert testimony to the effect that there are three separate diseases included in the general category of inflammatory bowel disease. These are ulcerative colitis, Crohn's disease, and antibiotic associated colitis. Upjohn defended the case on the proposition that the plaintiff has Crohn's disease, and although Cleocin has been linked to antibiotic associated colitis, there is no causal relationship between Cleocin and either Crohn's disease or ulcerative colitis.

The plaintiff presented one expert, Dr. Matthew J. Ellenhorn, who contradicted most of the testimony presented by Upjohn on the issue of causation. He stated that his opinion, based on a reasonable degree of medical certainty, was that the plaintiff's condition was caused by the ingestion of Cleocin. He further stated that assuming the plaintiff had an underlying Crohn's disease Cleocin could have aggravated the condition causing massive bleeding and creating the need for surgery. Dr. Ellenhorn testified that Upjohn fell below the requisite standard of care by marketing Cleocin without a warning that one of its adverse reactions could include severe inflammatory bowel disease. He then stated that all of the bowel diseases, Crohn's disease, ulcerative colitis, and antibiotic associated colitis have in the past 10 years been increasingly categorized under the heading of inflammatory bowel disease because a physician cannot distinguish among them in many cases. The plaintiff's case therefore centered around the argument that Upjohn failed to adequately warn of the association between Cleocin and inflammatory bowel disease. This breach of duty on the part of Upjohn led to the plaintiff's ingestion of Cleocin which ultimately resulted in his very serious injuries.

Because the causal relationship between Cleocin and the plaintiff's injuries emerged as the central issue at trial, Upjohn submitted a special interrogatory on proximate cause. The trial court gave the jury the following definition of proximate cause:

"When I use the phrase 'proximate cause' in these instructions, I mean the injury complained of must be the natural and probable

result of the acts of the defendant or of the failure of the defendant to act.

A cause of an injury is something that triggers a natural chain of events that ultimately produces the injury. Without the cause, the injury would not have happened."

The plaintiff did not object to this definition.

In addition, the plaintiff's damages instruction told the jury that one of the elements of damage for which the plaintiff claimed compensation was "[t]he aggravation of any preexisting ailment or condition."

■■ The plaintiff's main point on appeal is that the trial court erred in disregarding the general verdict in favor of the plaintiff and in entering judgment for Upjohn based upon the jury's answer to the special interrogatory. Citing *Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 150 N.E.276, he argues that the special interrogatory is controlling only if it is inconsistent with the general verdict. Inconsistency exists "when the special findings are clearly and absolutely irreconcilable with the general verdict." (*Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453, 455.) Where an examination of the jury finding reveals a "reasonable hypothesis consistent with the general verdict," the special finding cannot be said to be absolutely irreconcilable. (2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453, 455.) Basically, the plaintiff claims that in the instant cause the jury's answer, when considered in light of the arguments advanced at trial and the jury instructions, can be interpreted as consistent with the general verdict for the plaintiff. He makes three specific arguments to support this general claim. While the third argument was raised during the conference on instructions, the other two were raised for the first time in the plaintiff's post-trial motion.

First, he argues that the jury understood the word "proximate" in its ordinary sense, as meaning "immediate or direct." Their finding that Cleocin was not the "immediate or direct" cause of the plaintiff's injuries is legally irrelevant and does not preclude the possibility that they found Cleocin to have been a remote cause.

We cannot accept the contention that the word proximate was confusing and that the jury applied the ordinary rather than the legal definition of the word in answering the special interrogatory. A reading of the above-quoted definition which the court gave to the jury reveals that they were clearly instructed as to the legal meanings of cause and proximate cause. A "cause" was defined as "something that triggers a natural chain of events that ultimately produces the injury * * * [w]ithout the cause, the injury would not have happened." Even if we accept the plaintiff's argument that the jury believed Cleocin to be a remote rather than a direct cause, this definition rather clearly encompasses the idea of

remote cause. In our judgment, therefore, this argument does not present a reasonable hypothesis by which the special finding can be reconciled with the general verdict.

The plaintiff's second argument appears to be as follows. The question before the jury was whether Upjohn's failure to issue appropriate warnings with respect to Cleocin caused the plaintiff to sustain the injuries for which he now seeks recovery. It was never argued that Cleocin itself was a defective product. Rather, it was in a defective condition because of Upjohn's failure to include proper warnings. The definition of proximate cause given to the jury stated that proximate cause means "the injury complained of must be the natural and probable result of the *acts of the defendant* or of the *failure of the defendant to act*." (Emphasis added.) Both the arguments at trial and the proximate cause instruction focused on the conduct of the defendant rather than the harmfulness of the drug Cleocin. Thus, the plaintiff argues, the jury's answer that Cleocin did not cause the plaintiff's injuries simply reflected their determination that Cleocin, in itself, was not a defective or an unreasonably dangerous drug. Instead, as evidenced by the general verdict for the plaintiff, the jury determined that Upjohn's *failure to adequately warn* was the proximate cause of the plaintiff's injuries. We cannot accept this as a reasonable hypothesis sufficient to reconcile the special finding with the general verdict. Upjohn's posture at trial was that the plaintiff's severe injuries were the result of an underlying Crohn's disease which could neither be caused nor aggravated by Cleocin. Voluminous expert testimony was presented on the differences between antibiotic associated colitis, the type of injury associated with Cleocin, and Crohn's disease. Very simply, the jury's answer reflected their acceptance of Upjohn's argument that the plaintiff was suffering from a disease that was completely unrelated to his ingestion of Cleocin.

The third argument with respect to the special interrogatory is that it was fatally defective because it failed to refer to aggravation of a preexisting condition. Consequently, the jury may have felt that although Cleocin did not cause the plaintiff's condition, it acted to aggravate his injuries. This would explain why the jury entered a general verdict in favor of the plaintiff. In addressing this argument, we note that plaintiff's damages instruction informed the jury that one of the elements of damage was "the aggravation of any preexisting ailment or condition." The court ruled that the special interrogatory covered aggravation because it asked "[w]as Cleocin a proximate cause of the injuries claimed by Stewart Bluestein," and the damages instruction told the jury that the injuries he claimed included aggravation of a preexisting ailment or condition. The issue of aggravation was extensively covered during the trial. We do not believe that the trial court was incorrect in finding that the instructions

were sufficient to indicate to the jury that aggravation of a preexisting condition was one of the injuries claimed by the plaintiff. Again, we do not believe that the record establishes this as a reasonable hypothesis by which the special finding and general verdict can be reconciled.

■■ The plaintiff's alternate argument is that even if the answer to the special interrogatory is inconsistent with the general verdict, the answer is against the manifest weight of the evidence. We are not persuaded by this argument. Virtually all of the evidence relating to causation came before the jury by way of expert testimony. The weight to be given to expert testimony is a matter for the trier of fact. (*Hall v. Kirk* (1973), 13 Ill. App. 3d 656, 300 N.E.2d 600.) Upjohn presented testimony by several highly qualified experts in the field of gastroenterology. Each one stated unequivocally that, in his opinion, the plaintiff's ingestion of Cleocin neither caused his Crohn's disease nor aggravated it. There was voluminous evidence on both the differences between antibiotic associated colitis and Crohn's disease and on the lack of a causal relationship between Crohn's disease and Cleocin. The plaintiff presented one expert who disagreed with this evidence and maintained that there was a causal relationship. The jury was free to accept as true the evidence presented by Upjohn and to disbelieve the testimony of the plaintiff's expert.

■■ The next issues to be considered were generally by a request to admit facts which was filed by the plaintiff pursuant to Supreme Court Rule 216 (Ill. Rev. Stat. 1979, ch. 110A, par. 216). Rule 216(c) provides that any fact contained in the request to admit "is admitted" unless the party to whom the request is directed denies or objects to the fact within 28 days. In the instant cause, Upjohn sought to file its response approximately nine months after the request was served. The trial court allowed the late filing over the plaintiff's objection, but stated that any fact as to which the plaintiff could show prejudice because of the late filing would be deemed admitted.

The plaintiff's first argument with respect to this issue is that the facts in his request to admit were admitted by operation of law when Upjohn failed to respond within 28 days. He takes the position that Supreme Court Rule 216 gives no discretion to the trial court to allow a late filing. We do not believe that this is a proper interpretation of the law. It is true, as the plaintiff maintains, that certain courts have refused to relieve a tardy litigant from being bound by his failure to respond within the 28-day period. (See *Banks v. United Insurance Company of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167; *Crum v. Gulf Oil Corp.* (1973), 12 Ill. App. 3d 988, 299 N.E.2d 820.) However, in *Illinois State Toll Highway Authority v. Humphrey Estate* (1978), 62 Ill. App. 3d 316, 326, 379 N.E.2d 626, 633, the court took the position that a request to admit "is in the nature of discovery [citation] and as such the trial court has wide

discretion in controlling it." Also, in *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95, the court held that it could allow a late filing under its inherent power to prevent injustice. This apparently was the belief held by the trial court in the instant cause. Noting that certain of the facts contained in the request to admit concerned the central issue of proximate cause, the court stated, "[I]f I were to find those requests have been admitted by a lawyer's carelessness, without more, I would be depriving a party of his right to a trial by jury on a basic issue in this case." We do not believe that this action on the part of the trial court was improper.

The plaintiff next claims that even if the response could properly be allowed, the trial court erred in finding that he was not prejudiced by the late filing. Essentially, he argues that Dr. Andleman, the plaintiff's regular physician since birth, died between the expiration of the 28-day period and the time Upjohn filed its response. Because the plaintiff assumed the facts in his request were admitted, he failed to take Dr. Andleman's evidence deposition which would have contained crucial testimony on certain of those facts.

We understand the plaintiff's claim of prejudice to be rooted in the fact that Dr. Andleman was his regular physician and could therefore provide crucial testimony concerning his condition. However, the facts contained in the request to admit, such as "Cleocin can cause colitis," and "Cleocin-induced colitis may progress to a syndrome-like ulcerative colitis," were of a general medical nature. They did not require the testimony of the plaintiff's treating physician. Rather, any expert could have presented testimony concerning these facts. We therefore conclude, as did the trial court, that the plaintiff was not prejudiced by the loss of Dr. Andleman's testimony concerning these matters.

The plaintiff next contends that the trial court erred in vacating its order defaulting Upjohn on the issue of liability. On December 28, 1979, pursuant to Supreme Court Rule 237(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 237(b)), the plaintiff filed a notice to produce seven of Upjohn's out-of-State employees. Upjohn, together with the individual employees, filed a motion to quash the Rule 237 notice. The trial court denied both the motion to quash and Upjohn's request for certification pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). During the next five days, Upjohn unsuccessfully sought relief in the Illinois Supreme Court, the district court for the Northern District of Illinois, and the Seventh Circuit Court of Appeals. On February 12, 1980, Upjohn informed the trial court that it would not produce the witnesses until it had exhausted all avenues of appellate review. The trial court responded by entering an order defaulting Upjohn on the question of liability. On the following day, Upjohn filed a motion to reconsider and informed the trial

court that a motion for leave to file a *mandamus* petition was being filed in the Illinois Supreme Court. The trial court, noting that the purpose of sanctions is to require compliance and not to punish, stated that if on the following day Upjohn agreed to produce the out-of-State witnesses, the order defaulting Upjohn on the issue of liability would be vacated. On February 14, 1980, the Illinois Supreme Court denied Upjohn's petition, and Upjohn agreed to produce the witnesses. The trial court then vacated its order and awarded $2000 to the plaintiff's attorneys for their time with respect to the matter.

The plaintiff claims that the court abused its discretion in vacating its order because Upjohn's refusal to produce the witnesses was "deliberate, contumacious, and without legal justification."

■■ It is well established that sanctions are to be imposed only when noncompliance is unreasonable. (*Estate of Fado v. Fadukovich* (1976), 43 Ill. App. 3d 759, 357 N.E.2d 195.) Because an order of default is one of the most drastic sanctions, it should be used only as a last resort, and should be vacated if it will not cause a hardship for the parties to proceed to trial on the merits. *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.

■■ Applying these principles to the case at bar leads us to conclude that the trial court did not abuse its discretion in setting aside its default order against Upjohn. If Upjohn had produced its out-of-State employees before seeking review, it would have rendered the issue moot. On February 13, 1980, Upjohn asked the trial court to vacate the default judgment entered on the previous day and to put the matter over for a day so that Upjohn could obtain a ruling from the Illinois Supreme Court. The court stated that it would not delay proceedings and that Upjohn had to decide by the following day whether it would produce the witnesses. If Upjohn informed the court that it would comply, the default judgment would be vacated. On February 14, 1980, Upjohn agreed to produce the witnesses and the court vacated the judgment, taking into consideration that the period during which Upjohn was in noncompliance was a court holiday and covered a period of less than 24 hours. In our view, the court acted well within its discretion.

The next argument raised by the plaintiff concerns a hypothetical question presented at trial which included the plaintiff's medical records. The plaintiff claims that the trial court erred in refusing to exclude the portion of his medical history which covered the period from his birth through age 17. These particular records detailed such problems as diarrhea, vomiting, fever, discharges from the eyes, aphthous lesions, allergies and an enlarged liver and spleen. He claims that Upjohn failed to show a connection between this history and the experts' opinion that the plaintiff had Crohn's disease, and therefore it was irrelevant.

■■■ In addressing this issue we must recognize that the determination of whether evidence is relevant is largely within the discretion of the trial court and a reviewing court will not disturb the ruling unless there has been an abuse of discretion. (*Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 355 N.E.2d 547.) Moreover, any evidence which tends to prove a fact in controversy or renders a matter at issue more or less probable is considered relevant. *People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1.

It is true that none of Upjohn's experts testified that they could diagnose Crohn's disease solely from the plaintiff's medical history prior to age 17. However, Dr. Marshall Sparberg stated that data showing a lifelong history of digestive problems was relevant in diagnosing Crohn's disease and that liver and spleen problems are also relevant extracolonic manifestations of Crohn's disease. Also, there was testimony from Upjohn's experts that aphthous lesions and discharges from the eyes occur characteristically in Crohn's disease. In light of this evidence, we believe the trial court properly exercised its discretion in refusing to strike the plaintiff's early medical history.

■■ The plaintiff's last contention is that the trial court erred in directing a verdict for Upjohn on the breach of warranty count. Causation is an essential element of a breach of warranty theory. (63 Am. Jur. 2d *Products Liability* §91, at 97 (1972).) Because a general verdict for the plaintiff on the breach of warranty count could not have survived the jury's answer to the special interrogatory, it is unnecessary for us to consider whether the trial court erred in directing a verdict as to that count.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.