LEROY ATKINS et al., Plaintiffs-Appellants, v. ISAAC THAPEDI, Defendant-Appellee.

First District (3rd Division)    No. 87—148

Opinion filed February 10, 1988.—Rehearing denied March 17, 1988.

Albert Brooks Friedman, Ltd., of Chicago (Mitchell L. Hoffman, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Kay L. Schichtel and Cal R. Burnton, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Leroy Atkins filed a medical malpractice action against defendant Dr. Isaac Thapedi, alleging that he failed to accurately diagnose Leroy's back condition. Plaintiff's wife, Annie Atkins, filed a claim for loss of consortium. The jury returned a verdict in favor of

defendant, and the trial court entered judgment on the verdict. Plaintiffs appeal, contending that the testimony of one of plaintiff's subsequent treating physicians was improper. Plaintiffs also contend that certain references to insurance were prejudicial.

On April 15, 1981, plaintiff injured his back at work. He received treatment at a clinic, but in August 1981, plaintiff reinjured his back. Plaintiff's family physician hospitalized him for tests, bed rest, pain medication, traction and physical therapy. In late August 1981, plaintiff was referred to a general surgeon and was again admitted to the hospital.

On September 2, 1981, defendant, a neurosurgeon, first examined plaintiff at the request of the general surgeon. Defendant ordered several tests, including a myelogram. Defendant diagnosed spinal stenosis, a condition which results in the narrowing of the spine and which can cause severe pain by catching the nerve roots. Defendant also diagnosed a bulging disc at L5—S1. Surgery for the spinal stenosis was complicated and exposed the patient to high risks. Thus, defendant treated plaintiff conservatively for a few weeks, when defendant became concerned about plaintiff's dependence on narcotic pain medications, and the effect of the chronic, severe pain on plaintiff's personality. Defendant recommended surgery, but only on the bulging disc, and not for the stenosis.

Defendant informed plaintiff that if the pain was attributable to the spinal stenosis, removing disc material from L5—S1 might not relieve his pain. On September 28, 1981, defendant operated on plaintiff and saw a bulge which put pressure on the nerve root. He removed the disc material and relieved the pressure. After some improvement, plaintiff was discharged on October 9, 1981. Plaintiff saw defendant on a monthly basis, with varying reports of the amount of pain he experienced.

Defendant again admitted plaintiff to the hospital for tests in February 1982 due to his increased pain. Tests confirmed defendant's original diagnosis of spinal stenosis. Defendant again recommended conservative therapy rather than surgery and discharged plaintiff. On March 3, 1982, plaintiff informed defendant that he wished to proceed with the surgery. On March 29, 1982, defendant performed the surgery and observed considerable stenosis at the L4—L5 junction. The narrowing of plaintiff's spinal canal was quite pronounced, resembling an hourglass. Defendant lessened the narrowing with a bilateral laminectomy at L4—L5, thus freeing the compressed nerve roots at that level. Plaintiff was subsequently discharged after a normal post-operative recovery. Plaintiff continued to see defendant for several months,

474

and defendant treated him with pain medication and physical therapy. Defendant informed plaintiff that further surgery would not reduce his pain. Plaintiff last saw defendant on October 5, 1982. On October 15, 1982, plaintiff filed this suit.

In November 1982, plaintiff's attorney referred him to Dr. Mitchell Sheinkop, an orthopedic surgeon. Plaintiff was admitted to the hospital for several weeks of tests in January 1983. Plaintiff was placed on a rehabilitation program and continued to be treated by Dr. Sheinkop until September 1984.

Prior to trial, the trial court entered an order limiting each side to one expert witness. At trial, Dr. Bernard Sussman testified by way of a videotaped evidence deposition as an expert for plaintiffs. Dr. Sussman testified that defendant deviated from the standard of care by failing to diagnose and treat the herniated discs which still exist in plaintiff. Dr. Sussman testified further that other doctors also diagnosed herniated discs.

Dr. Sheinkop testified on behalf of defendant. The trial court granted plaintiffs' motion to bar the testimony of other treating doctors based on the physician-patient privilege. (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.) Plaintiffs expressly waived any claim of privilege as to Dr. Sheinkop.

Dr. George Dohrmann, a neurosurgeon, testified as an expert for defendant. Dr. Dohrmann opined that defendant's diagnosis and treatment were medically correct and met the requisite standard of care for neurosurgeons. Dr. Dohrmann diagnosed spinal stenosis with a narrowing of the spinal cord. Defendant properly removed all impingement of nerve roots outside the spinal canal and did all that was surgically possible to alleviate plaintiff's pain. Dr. Dohrmann agreed that further surgery would be of no benefit to plaintiff. He saw no evidence that plaintiff presently suffered from two undiagnosed herniated discs. Dr. Dohrmann testified further that plaintiff may have suffered an irreparable injury to the nerves in his back at the time of his accident. Plaintiff's current disability was most likely the result of an ongoing problem which began before he saw defendant and was not the result of defendant's care and treatment.

Plaintiffs contend that the trial court correctly found Dr. Sheinkop was an expert witness, but abused its discretion in allowing Dr. Sheinkop to testify because defendant failed to identify Dr. Sheinkop as an expert pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), and because the pretrial order limited defendant to one expert. The trial court has broad discretion concerning the admission of evidence, and its decision will not be disturbed on appeal absent an

abuse of discretion. *Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 312 N.E.2d 369.

■ An expert is an individual who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person and who may be expected to render an opinion within his expertise at trial. (107 Ill. 2d R. 220(a)(1).) A treating physician is not necessarily an expert witness. (See *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 508 N.E.2d 215 (distinguishing medical experts and treating physicians), *appeal allowed* (1987), 116 Ill. 2d 552.) Instead, the testimony of the physician may be offered only in regard to factual matters of which the doctor has personal knowledge. *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867; see also *Waterford v. Halloway* (1986), 142 Ill. App. 3d 668, 491 N.E.2d 1199 (two subsequent treating physicians testified as to care and treatment of plaintiff with no opinion expressed as to standard of care, and factual testimony was in direct contradiction to plaintiff's expert's testimony).

■ The main thrust of Dr. Sheinkop's testimony on direct examination was to contradict statements made by Dr. Sussman. For example, Dr. Sussman referred to Dr. Sheinkop and other treating doctors when he testified that, "I'm not the only one who has diagnosed [a herniated disc at L–4, L–5]. There are other doctors who examined this patient, did x-rays, diagnosed a herniated disk." Dr. Sheinkop, however, testified to the contrary. Dr. Sheinkop stated that it was his conclusion that there was "no contribution to the patient's pain from abnormalities of the disk at the L4–L5 level." He continued, "There was absolutely no evidence of herniated disk at any level at the time he was under my care ***."

Dr. Sussman also testified that, "Dr. Sheinkop is the attending doctor; and he, in the letter, felt that the patient should be operated on. *** [H]e was going to do a fusion." Dr. Sheinkop refuted this testimony when he explained: "There was a thought to determining whether instability of his spine played a role in his pain ***." Thus, as a means of treatment and diagnosis, the "patient was placed in a plastic type of custom-made brace, an attempt to relieve his pain." The brace was not helpful, however, and it was concluded "that he did not have instability of the spine as a cause of his back pain."

Dr. Sussman also stated that he would not agree "about the fusion except that his concern—Dr. Sheinkop's—is that as a result of two operations, the patient has an unstable back. Now I assumed that Dr. Sheinkop, I hoped Dr. Sheinkop, when he says fusion, he means he would fuse not for the instability, but would plan to take out the

disk before he does the fusion." In contrast, Dr. Sheinkop testified, "I did not believe there was a place for surgery in the care of the patient."

Throughout the trial, defense counsel repeatedly explained to the court that she did not call Dr. Sheinkop to testify about standard of care as an expert witness. Dr. Sheinkop himself stated that he was only to offer testimony having "to do with my care" and he "was told I could not get into the care rendered because I was not coming as an expert witness. I was being called as a treating physician."

However, defense counsel asked Dr. Sheinkop several questions which could be construed as an attempt to elicit an expert opinion.

"Q. The organic part of his back pain, were you able to determine with a reasonable degree of medical, surgical certainty as to whether his back pain was caused in any part by the condition of his disk at the L—4, 5 level?

\*\*\*

Q. Were you able to arrive at a conclusion, based upon a reasonable degree of medical and surgical certainty as to whether any abnormality of the L—4—excuse me, L—5 as one disk contributed to his problems?

\*\*\*

Q. Based upon this information that the back brace did not relieve his symptoms, were you able to arrive at a conclusion based upon the reasonable degree of medical and surgical certainty as to whether Mr. Atkins had instability of the spine?

\*\*\*

Q. Dr. Sheinkop, did you, based upon your—based upon the history, physical examination, CT scan, the myelogram, were you able to arrive at a decision as to whether this patient's condition based upon a reasonable degree of medical and surgical certainty as to whether this patient had a herniated disk at the L—4, 5 level that was compressing upon the nerve root?"

The form alone of the questions automatically could be identified as a means of eliciting an expert opinion, despite the fact that the questions concern only Dr. Sheinkop's own treatment and diagnosis of plaintiff and do not concern defendant's standard of care. The record clearly shows, however, that it was the trial judge and plaintiff's counsel who insisted on this form of the questions asked by defense counsel. She would not have used the "based upon a reasonable degree of medical and surgical certainty" language absent their insistence. Moreover, clearly the main thrust of the brief testimony on direct examination was to contradict factual statements made by Dr.

Sussman in regard to Dr. Sheinkop's own treatment and care of plaintiff. Thus, notwithstanding the precise form of defendant's questions, we find that any error which might have occurred was harmless. See *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867; *Waterford v. Halloway* (1986), 142 Ill. App. 3d 668, 491 N.E.2d 1199.

■ Generally, we will not reverse a jury verdict because of error in the admission of evidence unless there has been a denial of real justice. (*Greene*, 147 Ill. App. 3d 1009, 498 N.E.2d 867, citing *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 484 N.E.2d 365, *affirmed* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.) Moreover, an erroneous ruling on evidence is harmless where the result reached was not affected by the ruling, and the result reached was the only one warranted by other evidence in the case. (*Gillespie v. Norfolk & Western Ry. Co.* (1972), 3 Ill. App. 3d 779, 278 N.E.2d 420.) In addition, the burden is on the party seeking reversal to establish prejudice. *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867.

Plaintiffs had a more than ample opportunity to cross-examine Dr. Sheinkop and demonstrate any weaknesses in his testimony. At trial, Dr. Sheinkop's direct examination was very brief, covering only 16 pages of the transcript. The cross-examination by plaintiffs' counsel, however, extended over three days of the trial. Obviously, plaintiffs used the opportunity to vigorously cross-examine Dr. Sheinkop. Thus, we see little, if any, surprise or prejudice to plaintiffs. (See *Greene*, 147 Ill. App. 3d 1009, 498 N.E.2d 867.) Additionally, Dr. Sussman offered lengthy expert testimony on behalf of plaintiffs, which was effectively countered by Dr. Dohrmann. Thus, we cannot say Dr. Sheinkop's brief testimony on direct examination was an essential or deciding factor in the jury's decision.

We are not persuaded by plaintiffs' argument, which rests upon certain statements made by the trial court indicating Dr. Sheinkop was an expert witness. The record demonstrates that the trial court was not clear as to Dr. Sheinkop's role as a defense witness, and as to the nature of plaintiffs' objections. Thus, the trial court's statements concerning whether or not Dr. Sheinkop was an expert witness was not helpful.

We also find there was no surprise which prejudiced plaintiffs. Plaintiffs had been referred to Dr. Sheinkop by plaintiffs' counsel, and counsel indicated that he had originally intended to call Dr. Sheinkop as their expert witness. Plaintiffs were obviously familiar with the care and treatment rendered by Dr. Sheinkop.

■ Plaintiffs maintain that the trial court improperly overruled

the pretrial order restricting the number of experts. The record shows that plaintiffs' counsel expressly waived any objection on the basis of a patient-doctor confidentiality. Following Dr. Sheinkop's testimony, defendant called his disclosed expert, Dr. Dohrmann. Plaintiffs unsuccessfully objected, arguing that defendant had already used one expert, and thus the pretrial order prohibited defendant from offering a second expert.

A successor judge may not revise or modify previous discovery rulings unless there is a change of circumstances or additional facts which warrant such action. (*Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242.) The trial court here stated that it was overruling the pretrial order. However, even if Dr. Sheinkop testified as an expert, the trial court certainly had the discretion to permit the testimony, which was limited to Dr. Sheinkop's own treatment and diagnosis and which did not venture into the realm of standard of care opinions.

Plaintiffs argue further that Dr. Sheinkop introduced a new theory in the case when he stated that plaintiff's problem was in part psychological. This testimony was proper as it described plaintiff's actual condition between 1982 and 1984. Moreover, plaintiff testified that he had seen psychiatrists and been referred to pain clinics to learn to cope with the pain. In addition, Dr. Dohrmann was cross-examined concerning the functional aspects of plaintiff's pain. Defendant also testified he told plaintiff that nothing medical could be done for his pain. Thus, the functional aspects of plaintiff's pain were raised throughout the trial, and Dr. Sheinkop's testimony did not introduce a new theory in the case.

Plaintiffs next contend that two witnesses improperly referred to insurance and disability benefits, thereby prejudicing plaintiffs' case. Reference to insurance during a trial is generally improper, but inadvertent references do not require reversal where no prejudice is shown. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 457 N.E.2d 85.) Dr. Dohrmann listed the materials he reviewed, including a treating physician's "letter to the Disability Bureau." Plaintiffs' counsel admitted to the trial court that there was no such thing as the "Disability Bureau," and the trial court denied plaintiffs' motion for a mistrial. One of plaintiff's treating physicians, upon being questioned by defense counsel as to what documents he held in a file, listed the items, including "a number of notes to Kemper Insurance Company." Plaintiffs moved for a mistrial, which was denied. The comments complained of appear to be inadvertent and were not highlighted in any way before the jury. In addition, the court in-

structed the jury that "whether a party is insured has no bearing whatsoever on any issue that you must decide. You must refrain from any inferences, speculation or discussion about insurance." Moreover, because the jury never reached the question of damages, plaintiffs clearly were not prejudiced in any way by these inadvertent remarks. (See *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 457 N.E.2d 85.) The trial court did not abuse its discretion in denying plaintiffs' motions for a mistrial.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.