PHILIP FLANAGAN, Plaintiff-Appellant, v. LUIS G. REDONDO, Defendant-Appellee.

First District (2nd Division)   No. 1—90—1414

Opinion filed December 24, 1991.—Rehearing denied May 27, 1992.—Modified opinion filed July 14, 1992.

DiVITO, J., dissenting.

Alan C. Mendelson, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (William C. Anderson III, Hugh C. Griffin, and Diane I. Jennings, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff, Philip Flanagan, sued defendant, Dr. Luis G. Redondo, for medical malpractice in the treatment of plaintiff's broken leg. Plaintiff appeals from the judgment entered on the jury's verdict in favor of defendant, arguing that the verdict was contrary to the evidence and trial errors require a new trial.

On July 24, 1982, plaintiff injured his leg when he fell from a ladder. Plaintiff's wife took him to the emergency room at Christ Hospital, where Dr. Edward Snyder, the orthopedic surgery resident, diagnosed the injury as a spiral fracture of the lower third of the tibia. Dr. Snyder found that plaintiff's foot was somewhat rotated out of position. He attempted to correct the rotation before he applied a cast. He was dissatisfied with the initial casting, so he removed the cast. After further attempting to correct the rotation, he applied a second cast and admitted plaintiff to the hospital.

Dr. Snyder told defendant, the attending orthopedic surgeon, that he had been unable to totally correct the deformation of the leg. Defendant saw plaintiff the next morning and reviewed the X rays of plaintiff's foot. He found no indication of abnormal rotation, so he left the cast in place.

During several outpatient visits, plaintiff complained to the defendant that his foot was rotated out from his leg. Both plaintiff's wife and a friend who testified at trial had also noticed that plaintiff's foot was obviously cocked out to the side. Eventually, defendant told plaintiff that his leg had healed properly and that he was walking improperly.

Dr. Irwin Feinberg, another orthopedic surgeon, examined plaintiff on February 7, 1983. He found that plaintiff's foot was abnormally rotated out. Dr. Feinberg recommended that plaintiff submit to a surgical procedure to correct the rotation. Plaintiff agreed and Dr. Feinberg performed the surgery. During surgery, Dr. Feinberg cut through the upper third of both the tibia and the fibula, realigned the bones and put a new cast on plaintiff's leg.

At trial, Dr. Feinberg testified, as an occurrence witness for plaintiff, that he cut through the tibia and fibula because that allowed easier manipulation of the bone fragments. He said that an intact fibula does not prevent rotation due to a spiral fracture like plaintiff's. Defense counsel showed Dr. Feinberg X rays of plaintiff's leg taken in Dr. Feinberg's office. Dr. Feinberg testified that although he had not noticed it before, he now saw a fracture at the head of the fibula on one X ray, in addition to the fracture of the lower part of the tibia. He presumed that the fibula head was fractured at the same time as the tibia, unless some other cause could be documented.

Defendant moved to prevent plaintiff's expert, Dr. Jeffrey Gilles, from testifying that the X rays showed a fracture of the fibula and from giving his opinion regarding the significance of the fracture and the rotation of plaintiff's foot. Although Dr. Gilles' deposition was not presented to the trial court, plaintiff admitted that Dr. Gilles had not included a broken fibula as a basis for his opinion that the foot was rotated out of position.[1] The trial court sustained defendant's objection to the prospective expert testimony, stating:

"You take the facts as they are. It might be fortunate or unfortunate as it were that Dr. Feinberg looked at that film and detected there was a fracture at another place he hadn't seen before. We can't try that issue here."

Dr. Gilles testified that the X rays showing a spiral fracture of the tibia indicated the possibility of rotation. He stated that an intact fibula with intact ligaments would decrease the extremes of rotation, but it would not preclude rotation. Dr. Gilles stated that, in his opinion, defendant violated the standard of care for plaintiff's

---

[1]Plaintiff appended the deposition to his response to the petition for rehearing. Plaintiff did not file the deposition in the trial court and he did not move this court to permit supplementation of the record, so the deposition is not properly part of the record on appeal. (See 134 Ill. 2d Rules 321, 329.) Accordingly, we disregard the deposition.

injury when he failed to recognize and treat the rotational deformity of plaintiff's foot.

Plaintiff moved to prevent defendant's expert witness, Dr. Robert Hall, from using a model skeleton in his testimony. Dr. Hall intended to use the model to show that Dr. Feinberg did not alter the foot's rotation, by showing that if he had, he would have created a gap in the fibula. Plaintiff's counsel argued that the model was misleading because it did not include the ligaments or other muscle attachments which would keep the fibula intact after rotation. The court allowed Dr. Hall to use the skeleton to describe the results of Dr. Feinberg's surgery.

Dr. Hall testified that the X rays showed no fracture of the fibula. The intact fibula acted as a splint preventing the tibia from moving, thereby preventing the foot from rotating out of position despite the spiral fracture of the tibia. He could determine from the X rays alone that there had never been any rotation of plaintiff's foot. Dr. Hall based his opinion in part on the X ray of the fibula:

> "[I]f the fibula is not broken or interrupted—I shouldn't say not broken. As long as it is aligned, despite the fact it may be broken, we know there is no rotational malalignment because with rotational malalignment, the fibula must also have rotational malalignment."

In Dr. Hall's opinion, defendant's treatment of plaintiff met the standard of care, and there was no evidence of rotational malalignment due to defendant's care. The X rays taken before and after Dr. Feinberg performed surgery showed no change in bone alignment or rotation of the foot. In Dr. Hall's opinion, Dr. Feinberg performed the surgery for no reason at all.

Plaintiff sought to recall Dr. Feinberg as a rebuttal witness to point out how the post-surgical X ray showed that he corrected the rotation of the foot and to explain why the model Dr. Hall used was misleading. The trial court denied the motion. Although plaintiff's attorney failed to mention the model in his formal offer of proof made after the court's initial ruling, the discussion on the record shows that the court also considered the use of rebuttal to explain why the model was misleading. Following the formal offer of proof, the court repeated its ruling.

In closing argument, defense counsel commented on Dr. Feinberg's cross-examination testimony that the X rays showed a fracture at the head of the fibula:

> "Why did he do that?
> * * *

The reason is that he knows, and [plaintiff's attorney] knows, and everybody that knows anything about legs and tibias and fibulas [knows] that if this is intact, this can't turn that's why. So they had to invent a fracture.

Did you hear plaintiff's expert Dr. Gill[e]s? *** Did Gill[e]s ever say that was a fracture? Uh-[u]h. Never did."

Plaintiff contends that the jury's verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence if

"it is palpably erroneous and wholly unwarranted [citation], is clearly the result of passion or prejudice [citation], or appears to be arbitrary, unreasonable, and not based upon the evidence [citation]. When considering whether a verdict was contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee ***." (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.)

The jury's verdict should not be set aside if there is sufficient credible evidence to support it, and the jury alone should determine the weight and credibility of conflicting testimony. *Moehle v. Chrysler Motors Corp.* (1981), 100 Ill. App. 3d 353, 359, 426 N.E.2d 1099, 1103, *aff'd* (1982), 93 Ill. 2d 299, 443 N.E.2d 575.

In this case, defendant testified that plaintiff's foot was never rotated out of position; it appeared malrotated because of the way plaintiff walked on it. Dr. Hall corroborated this testimony, and he added that defendant did not violate the standard of care. This evidence is sufficient to support the verdict.

■ Plaintiff argues that the trial court committed reversible error when it refused to allow plaintiff's expert, Dr. Gilles, to testify that he could see an indication on one X ray of a fracture on the head of the fibula and that the presence of that fracture further supported his conclusion that the X rays and all of the other medical evidence indicated that plaintiff's foot was rotated out of position. The court disallowed the testimony under Supreme Court Rule 220, which provides:

"(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:
***

(ii) his conclusions and opinions and the bases therefor[.]
***

***

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.

* * *

*** To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (134 Ill. 2d Rules 220(c), (d).)

In a recent decision interpreting this rule, the court stated:

"The purpose of Rule 220, generally, is to promote the timely and good-faith pretrial disclosure of expert witnesses to prevent surprise and to facilitate pretrial investigation of credentials of the expert and preparation of cross-examination as well as the substance of the testimony of the opposing party's own expert. [Citations.] When the trial court has imposed sanctions for noncompliance with Rule 220, the trial court's ruling will not be upset in the absence of a showing that the ruling resulted from an abuse of discretion. [Citation.]

However, each subsection of the rule has a different function. Whereas Rule 220(b) allows a trial court to establish a disclosure schedule so as to disqualify an expert who is not properly disclosed, Rules 220(c) and (d) require timely notification of shifts in an expert's theory or belief and the limiting of the expert's testimony accordingly." *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 60-61, 573 N.E.2d 279, 286-87.

■ In exercising its discretion to impose sanctions, the court must "balance the needs of discovery and resolution of the issues on their merits." (*John Biestek & Associates, Ltd. v. Kelly* (1989), 192 Ill. App. 3d 301, 303, 550 N.E.2d 230, 232.) Sanctions as severe as disallowing relevant testimony should be imposed only when noncompliance is unreasonable. (*Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 679, 430 N.E.2d 580, 586.) Once sanctions are imposed, the sanctioned party has the burden of showing that noncompliance was reasonable. (*Leeson v. State Farm Mutual Automo-*

*bile Insurance Co.* (1989), 190 Ill. App. 3d 359, 368, 546 N.E.2d 782, 788.)

"Pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), sanctions imposed for violations of discovery rules must be proportionate to the gravity of the violation. [Citation.] The purpose of a sanction pursuant to Rule 220 is not to punish [citation], but to insure fair discovery and a trial on the merits [citation]. A trial court's exercise of its broad discretion in imposing sanctions for discovery violations will not be disturbed absent a clear abuse." *Caruso v. Pine Manor Nursing Center* (1989), 182 Ill. App. 3d 879, 883, 538 N.E.2d 722.

In *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224, 511 N.E.2d 974, 981, the Second District Appellate Court opined that trial courts have narrow discretion over sanctions for violations of Rule 220. In that case the trial court permitted the plaintiff to present testimony of an expert plaintiff retained 14 months before trial, although the plaintiff did not disclose the expert until trial. Although the appellate court argued that Rule 220 narrows the trial court's discretion, it held that even if the court had the broad discretion pertinent to other discovery rules, by failing to impose sanctions against the plaintiff it abused that discretion. We agree with the standard for review of sanctions imposed under Rule 220 stated in *Caruso*, but we note that even if Rule 220 narrows the range of the trial court's discretion over sanctions, the court still must consider the reasonableness of noncompliance and the need for resolution of issues on their merits before imposing sanctions. The trial court's discretion over discovery sanctions does not overcome the duty of "insuring a fair trial for all litigants." *Noll v. Snap-On-Tools Corp.* (1980), 89 Ill. App. 3d 1120, 1123, 412 N.E.2d 1185, 1188.

Here, an occurrence witness testified to evidence which the witness apparently discovered during cross-examination. Dr. Feinberg's testimony on direct examination pertained only to what he saw and what he did in his treatment of plaintiff. He gave no opinion concerning the propriety of defendant's treatment of plaintiff. Therefore, he was strictly an occurrence witness, not an expert witness.

"An expert is an individual who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person and who may be expected to render an opinion within his expertise at trial. [Citation.] A treating physician is not necessarily an expert witness. [Citation.] Instead, the testimony of the physician

may be offered only in regard to factual matters of which the doctor has personal knowledge." (*Atkins v. Thapedi* (1988), 166 Ill. App. 3d 471, 475, 519 N.E.2d 1073.)

The doctor

> " 'whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit *** should be treated as an ordinary witness.' " *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 235, quoting Fed. R. Civ. P. 26(b)(4), Advisory Committee Notes (1970 amendment).

When defense counsel handed Dr. Feinberg some X rays and asked what they showed, he testified that he saw a break in the fibula which he had not previously seen. This interpretation of the X ray was expert testimony, since it was his opinion on a matter not within common knowledge, and it did not concern his treatment of plaintiff. The evidence could not have influenced his treatment of plaintiff since he testified that he was not aware of it when he treated plaintiff. Defendant adduced this expert opinion on cross-examination; plaintiff did not in any way seek expert testimony from Dr. Feinberg on direct. For purposes of considering sanctions against plaintiff for violation of Rule 220, Dr. Feinberg must be regarded strictly as an occurrence witness.

After Dr. Feinberg produced the newly discovered evidence, defendant's expert testified that the X rays showed no fracture of the fibula and that even if there were a fracture of the fibula, it would not affect the possibility of rotation of the foot.

Plaintiff's expert, Dr. Gilles, was not allowed to answer because the trial court found his proposed testimony would violate Rule 220. Plaintiff's expert would have testified that Dr. Feinberg correctly interpreted the X ray, and the X ray showing the fracture further supported Dr. Gilles' expert opinion that plaintiff's foot was rotated out of position. At trial, as in his deposition, Dr. Gilles testified that the medical evidence showed that the foot was rotated out of position and that defendant failed to properly treat the malrotation. The expert did not change his basic opinion or beliefs.

> "[W]here testimony supports the larger theory presented by an expert, is not inconsistent with that theory, and does not present an alternative to it, it should be deemed part of the theory for purposes of [Federal discovery rules]." *Weiner v. Kneller* (D.C. App. 1989), 557 A.2d 1306, 1311.

See also *Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 1099, 530

N.E.2d 1007.

Although Dr. Gilles admitted that he had seen the pertinent X rays prior to his deposition, he had not seen the indication of a fibular fracture until Dr. Feinberg pointed it out at trial. Plaintiff did not know of his need for expert testimony on this matter until trial. (See *Engel v. Chicago & North Western Transportation Co.* (1989), 186 Ill. App. 3d 522, 542 N.E.2d 729 (trial court did not abuse discretion by permitting plaintiff's expert to testify concerning exhibits presented by defendant, after all experts were barred under Rule 220, where plaintiff could not have known of need for testimony before seeing exhibits).) Defendant has never argued that plaintiff withheld this information from defendant or plaintiff's expert in an effort to circumvent discovery rules. In this case, plaintiff has shown that he did not unreasonably fail to notify defendant of this additional basis supporting his opinion.

In *Potlach Corp. v. United States* (9th Cir. 1982), 679 F.2d 153, 154:

> "The Government failed by seven weeks to comply with a discovery deadline set by the district court for the exchange of appraisal reports by expert witnesses. As a sanction for this failure, \*\*\* the Government was denied the right to call those experts as trial witnesses or to offer their reports in evidence. Following trial, judgment was rendered against the Government."

The court of appeals found the delay was not due to circumstances in the government's control, and the record did not support the district court's conclusion that the government never intended to comply with discovery orders. The court of appeals concluded that "imposition of the sanction under the circumstances here presented constituted an abuse of discretion." *Potlach*, 679 F.2d at 154.

In *Ratner v. General Motors Corp.* (1990), 241 N.J. Super. 197, 574 A.2d 541, the plaintiff's expert's proposed trial testimony exceeded discovery responses, surprising the defendant, and the trial court disallowed the testimony beyond the responses as a discovery sanction. The appellate court reversed, finding that the restriction on testimony severely prejudiced the plaintiff and the record showed that plaintiff had no intent to mislead.

> "Where[,] as here, the critical surprise evidence resulted through no fault of either plaintiff or her attorney \*\*\* and defendant would suffer no prejudice from an adjournment or mistrial, the remedy of exclusion of this vital evidence cannot be said to have been just or reasonable." *Ratner*, 241 N.J.

Super. at 203, 574 A.2d at 544.

Similarly, in this case the failure to give defendant prior notice of the addition to the basis for the expert's opinion was not due to plaintiff's fault or circumstances in plaintiff's control. The record does not show that defendant would have been prejudiced by presentation of the expert testimony, since defendant was able to respond to the new evidence at trial through its expert's testimony.

◼ When Dr. Feinberg, the occurrence witness, presented new evidence at trial, surprising both parties, the trial court could have disallowed both parties' experts from commenting on the evidence, or it could have allowed both parties' experts to comment, within its discretion. Instead, the trial court allowed one party's expert to comment on the evidence and barred the other party's expert from responding, when there was no showing that the party who presented the occurrence witness planned the disclosure at trial of the new evidence or otherwise acted in bad faith in its presentation of the evidence. (See *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 176, 533 N.E.2d 894, 897.) The trial court did not effectively prevent the jury from considering the evidence of a fibular fracture, as it purported to do. Rather than removing the issue from the case, the court allowed only one party to present its evidence on the issue.

In view of plaintiff's good faith in response to discovery and the admission of testimony from defendant's expert contradicting the existence and effect of the fracture to the fibula, the trial court abused its discretion by disallowing opposing testimony from plaintiff's expert. The prejudicial effect of the court's action is highlighted by defense counsel's closing argument, which implied that there was no fracture to the fibula because Dr. Gilles did not so state, and that plaintiff's attorney fabricated the testimony of a fibular fracture because without such a fracture there could not have been rotation. The trial court must balance the need for discovery with the need for resolution of the issues on their merits. "The importance of prompt disposition of cases and compliance with the dictates of [s]upreme [c]ourt [r]ule[s] *** cannot be allowed to overshadow the ultimate aim of all courts: the attainment of a just result." *Jack v. Pugeda* (1989), 184 Ill. App. 3d 66, 79, 539 N.E.2d 1328, 1337.

We emphasize that we do not here decide how we would resolve the case if the expert witness, rather than an occurrence witness, had discovered the evidence. We also do not decide whether we would reach the same result if the newly discovered evidence, which

is in the nature of expert evidence, had been improperly adduced on direct examination of the doctor who was presented solely as an occurrence witness. We decide only that, when an occurrence witness presents newly discovered evidence, and the trial court allows one party's expert to respond to that evidence, the court must allow the other party's expert to comment on the evidence unless the court finds that that party acted in bad faith in its presentation of the evidence.

Since this case must be remanded for a new trial and the other issues raised on appeal are likely to arise again at the new trial, we will address them briefly here. Plaintiff contends that the trial court committed prejudicial error when it permitted Dr. Hall to use a model of the affected bones in his testimony.

> "While the use of models or skeletons to assist in the explanation of X ray findings is within the discretion of the trial court, such demonstrative evidence must help explain some relevant issue in the case." (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 861, 508 N.E.2d 508, 518.)

Moreover, such evidence may be inadmissible if witnesses do not provide an appropriate foundation. *Gallick v. Novotney* (1984), 124 Ill. App. 3d 756, 759, 464 N.E.2d 846, 848.

In this case, Dr. Hall testified that the skeletal model was "a true and accurate and fair representation of the skeletal anatomy including the fibula and the tibia." The trial court did not abuse its discretion when it permitted Dr. Hall to use the model in his testimony, especially in view of the court's "limited right to exclude such tangible evidence as is material and relevant." *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 762, 452 N.E.2d 558, 569.

The trial court refused to allow plaintiff to recall Dr. Feinberg to testify in rebuttal to Dr. Hall's testimony. Rebuttal evidence is admissible if "it tends to explain, repel, contradict or disprove the evidence of defendant." *Illinois State Toll Highway Authority v. Grand Mandarin Restaurant, Inc.* (1989), 189 Ill. App. 3d 355, 364, 544 N.E.2d 1145, 1150.

> "[W]here a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter." *Loftus v. Loftus* (1907), 134 Ill. App. 360, 362, quoted in *Levenson v. Lake-To-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 539, 394 N.E.2d 1359, 1369.

Here defendant's expert witness used a model of the affected bones to explain his theory concerning the ineffectiveness of Dr.

Feinberg's surgery. Dr. Feinberg was prepared to testify on rebuttal that the model did not accurately represent the structures involved. Under *Grand Mandarin*, the testimony would have been permissible rebuttal as an explanation of matters raised in Dr. Hall's testimony. At the new trial, plaintiff should be allowed to present a rebuttal witness to explain the model's defects. We express an opinion on this issue only because it may arise at the new trial. We will not decide whether the failure to allow Dr. Feinberg's rebuttal constituted reversible error.

Reversed and remanded.

HARTMAN, P.J., concurs.

JUSTICE DiVITO, dissenting:

I respectfully dissent from the majority's conclusion that the trial court erred in excluding testimony of plaintiff's expert in this case. In my opinion, the majority decision represents an unwarranted departure from established authority concerning Supreme Court Rule 220. The trial court's ruling, proper and indeed mandated by Rule 220, should be upheld.

In this case, Dr. Gilles had been deposed pursuant to Rule 220. In preparation for his deposition, he had reviewed the X rays taken at the hospital as well as the relevant X rays taken by Dr. Feinberg. Yet, like Dr. Feinberg, he had not seen a fracture of the fibula. In his deposition, his expert opinion was that the spiral fracture of the tibia indicated the possibility of rotation; he gave no opinion that referred to or relied upon a fracture of the fibula. He testified at trial that he had received and reviewed the X rays before his deposition, that he understood his role was to comment about the care rendered, and that he had carefully reviewed the provided materials so as not to reach any incorrect conclusions.

During the discussion concerning the admissibility of Dr. Gilles' proposed new opinion, defendant stressed that at his deposition Dr. Gilles had "based all of his opinions on the theory there was no fracture in the fibula" and that defendant was surprised and would be prejudiced by the new evidence. Indeed, the record corroborates this argument because defendant's theory of defense, from opening statement onward, was that plaintiff suffered no injury other than the fractured tibia and that this injury alone would not have caused the rotation plaintiff alleged. Thus, had Dr. Gilles been allowed to testify at trial concerning a fracture of the fibula, such testimony

unquestionably would have been, to use the words of Rule 220(d), "direct testimony at trial," both "inconsistent with" and "beyond the fair scope of the facts known or opinions disclosed" in his deposition.

In reaching its conclusion that the trial court abused its discretion in applying Rule 220 to exclude Dr. Gilles' shift in theory, the majority refers to standards applicable to violations of discovery orders under supreme court rules other than Rule 220. This case, however, is governed by a specific supreme court rule that spells out a specific requirement:

> "[The expert's] direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings." (134 Ill. 2d R. 220(d).)

As applied to this case, the mandate of Rule 220(d) is unambiguous: the expert's direct testimony may not contradict or go beyond factual information that was available at the time of his deposition. The majority's conclusion that the trial court abused its discretion, when in fact it did only what Rule 220(d) requires, is indefensible. That conclusion is not made acceptable by the majority's insistence that its holding is based on the fact that the evidence of the fractured fibula was first presented by an occurrence witness.[2]

The majority places great significance in the fact that plaintiff's occurrence witness/treating physician presented "newly discovered evidence." The underpinning of its holding is expressed in its assertion that "[p]laintiff did not know of his need for expert testimony on this matter until trial" (231 Ill. App. 3d at 965), but that statement is simply unwarranted by the record in this case. Indeed, plaintiff understood fully his need for expert testimony: plaintiff understood before trial that a primary issue in this case was whether only the tibia injury could have led to rotation, and plaintiff's expert offered an opinion about X rays during his deposition different from the opinion he desired to give at trial. This case does not

---

[2]The person so emphatically identified by the majority as an "occurrence witness" (an identification he deservedly receives, pursuant to case law interpretation of Rule 220, because of his role as a treating physician) was Dr. Irwin Feinberg, who performed a surgical procedure that involved cutting through the upper third of both the tibia and the fibula to realign plaintiff's bones so that the perceived rotation might be corrected. Dr. Feinberg examined the hospital's and his own X rays and performed the surgical procedure without observing the fracture of the fibula. He first observed what he opined to be a fracture of the fibula when he was shown an X ray during his testimony at trial.

present facts similar to those found in *Engel v. Chicago & North Western Transportation Co.* (1989), 186 Ill. App. 3d 522, 542 N.E.2d 729, relied upon by the majority. In that case, notwithstanding the court's order barring all experts, the plaintiff succeeded in having a document examiner give testimony concerning suspicious documents produced for the first time at trial, despite prior discovery requests for their production.

Every case construing Rule 220(d) reaches a conclusion exactly opposite that reached by the majority here. The language of one of those cases, *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 573 N.E.2d 279, is quoted extensively by the majority, but the import of the quoted language and the conclusion reached in that case—upholding the barring of an expert from testifying inconsistent with his deposition testimony—are ignored. Another case cited by the majority, *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974, is given short shrift, perhaps because it reached a conclusion totally contrary to the majority's and stresses the severe limitation placed on the trial court's discretion by Rule 220. Although the majority expresses its "agree[ment] with the standard for review of sanctions imposed under Rule 220 stated in *Caruso [v. Pine Manor Nursing Center* (1989), 182 Ill. App. 3d 879, 538 N.E.2d 722]" (231 Ill. App. 3d at 963), it fails to relate that in *Caruso,* the court held simply that the trial court abused its discretion in barring the defense expert's entire testimony because he testified beyond the scope of the basis of one of his opinions. The standard endorsed by the majority here does not support the conclusion it reaches; on the contrary, proper application of that standard (sanction must be proportionate to the gravity of the discovery violation) would lead to the same result reached by the trial court in this case.

In addition to *Baird v. Adeli* and *Phelps v. O'Malley,* many cases uphold exclusion of expert testimony for being inconsistent with or going beyond the scope of the facts known or opinions disclosed during discovery. (See, *e.g., Chicago & Illinois Midland Ry. Co. v. Crystal Lake Industrial Park, Inc.* (1992), 225 Ill. App. 3d 653, 658, 588 N.E.2d 337 ("Rule 220 is not advisory and it must be followed"); *Marshall v. Osborn* (1991), 213 Ill. App. 3d 134, 571 N.E.2d 492; *Karr v. Noel* (1991), 212 Ill. App. 3d 575, 571 N.E.2d 271; *Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 540 N.E.2d 770; *Stringham v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 312, 536 N.E.2d 1292; *Friedland v. Allis Chalmers Co. of Canada* (1987), 159 Ill. App. 3d 1, 511 N.E.2d 1199.) The majority has not cited, nor am I aware of, any case that justifies the result reached here. Indeed, this result

is inconsistent with the goal of Rule 220, that is, to afford timely disclosure of expert witnesses and their testimony, so as to allow adversaries adequate opportunity to investigate the credentials of proposed expert witnesses and to review the substance of their opinions with their own experts in order to prepare their own theory of the case and to properly prepare for cross-examination. See *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 911, 511 N.E.2d 912, 918.

The majority's suggested cure for what occurred in this case is perplexing. In addition to its determination that the trial court should have ignored the mandate of Rule 220(d), the majority suggests alternatively that "the trial court could have disallowed both parties' experts from commenting on the evidence." (231 Ill. App. 3d at 966.) Apparently, the majority feels that permitting Dr. Feinberg's testimony about the fractured fibula to be unrebutted somehow satisfies the trial court's "duty of 'insuring a fair trial for all litigants.'" Rather than insuring fairness, disallowance of the defense expert's testimony would have gutted the defense case while rewarding plaintiff for the previously undisclosed evidence of his occurrence witness/treating physician.

The majority emphasizes that plaintiff did not seek to circumvent the discovery rules and acted in good faith. Nonetheless, the provisions of Rule 220 that require the exclusion of evidence when an expert changes his theory are not triggered solely by deliberate efforts to circumvent the rule or by bad-faith conduct. Although those considerations are significant, their absence does not preclude application of Rule 220 sanctions. Moreover, it is difficult to understand the statement by the majority that "[t]he expert did not change his basic opinion or beliefs." (231 Ill. App. 3d at 964.) That statement provides a new and inappropriate rule of application for alleged Rule 220 violations: if an expert's opinion or beliefs are unchanged, that expert may add to or subtract from the facts or data that form the basis of the opinion or beliefs. Neither the plain language of Rule 220 nor its case law interpretation justifies such a rule.

At the conclusion of its opinion, the majority asserts that although it does not decide whether the trial court's refusal to allow Dr. Feinberg to testify in rebuttal constituted reversible error, it expresses "an opinion on this issue only because it may arise at the new trial." (231 Ill. App. 3d at 968.) The implication, however, that the trial court's ruling was erroneous must be addressed. No one can quarrel with the majority's statement that rebuttal evidence concerning the model's legitimacy should be allowed so long as there is a proper foundation for such evidence. Here, although the majority states that

"Dr. Feinberg was prepared to testify on rebuttal that the model did not accurately represent the structures involved" (231 Ill. App. 3d at 968), there is no basis in the record before us to conclude that he would have so testified or that he was justified in so doing. The record in this case contains absolutely no foundation for justifying rebuttal evidence.

Plaintiff's opening and reply briefs demonstrate his awareness that he did not preserve this issue for appeal. In his briefs, plaintiff contends only that he should have been allowed to have Dr. Feinberg use the X rays to show the derotation by drawing a line along the edges of the fracture that he created during his osteotomy. He does not argue that he should have been allowed to rebut defendant's use of the model. It was not until oral argument before this court that plaintiff first contended that the trial court erred in not allowing rebuttal testimony concerning the model, a contention that he has waived for raising it so late, and one that has no validity for reasons that follow.

Although the record reflects that plaintiff objected to defendant's use of the skeletal model as misleading and even did so in the presence of the jury, providing the grounds for his objection in the jury's presence, the record also reflects that plaintiff asked Dr. Hall not one question that would have provided a sufficient foundation for rebuttal testimony. This failure to cross-examine concerning the alleged deficiencies in the model occurred despite the court's suggestion to plaintiff that his cross-examination could deflect any misleading aspect of the exhibit. Had plaintiff asked Dr. Hall about the alleged shortcomings of the model, he might have developed fully the points he considered significant. In any event, because no foundation questions were propounded to Dr. Hall, there was nothing for plaintiff to rebut. Under these circumstances, the trial court's ruling was correct.

Further, the record shows plaintiff made a formal offer of proof concerning what Dr. Feinberg would testify to in "rebuttal." That offer of proof contained not one word addressing the propriety of the model. The trial court properly ruled that the proposed testimony was not rebuttal, but merely a reiteration of the testimony already offered by plaintiff. In short, there is no basis for concluding that the trial court prevented plaintiff from presenting admissible rebuttal evidence.

For the foregoing reasons, I would affirm the judgment of the trial court.